IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CHURCH JOINT VENTURE, A LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:12-cv-02999 |
| EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME; KATHERINE BLASINGAME CHURCH; EARL BENARD "BEN" BLASINGAME, JR.; BLASINGAME FAMILY BUSINESS INVESTMENT TRUST; BLASINGAME FAMILY RESIDENCE GENERATION SKIPPING TRUST; and FIBERZONE TECHNOLOGIES, INC.; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER

Before the Court are six motions.[1] <u>First</u>, on June 29, 2016, Defendants Katherine Blasingame Church ("KBC") and Earl Benard "Ben" Blasingame, Jr. ("EBB Jr.") filed a Motion to Dismiss Firt [*sic*] Amended Complaint Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (ECF No. 155 ("KBC/EBB Jr. Mot.").)

---

[1] Collectively, five of the motions are dispositive motions by the remaining Defendants. Significant parts of the briefing are duplicative. Going forward, including for any pretrial filings, Defendants must file their papers jointly. (For a given filing, if a Defendant does not adopt arguments that others offer, the Defendant should note that in a footnote.) If Plaintiff responds to a filing, it must file one collected response.

On July 27, 2016, Plaintiff Church Joint Venture, A Limited Partnership ("Church JV") filed a response to the KBC/EBB Jr. Motion. (Pl.'s Resp. to Defs. KBC and EBB Jr.'s Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 161 ("Church JV Resp. to KBC/EBB Jr. Mot.").) On August 10, 2016, KBC and EBB Jr. filed a reply in support of the KBC/EBB Jr. Motion. (Defs. KBC and EBB Jr.'s Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 168 ("KBC/EBB Jr. Reply").)

Second, on June 29, 2016, Defendant Fiberzone Technologies, Inc. ("Fiberzone") filed a Motion for Summary Judgment as to Counts II, III, IV, and V of the Complaint. (ECF No. 156 ("Fiberzone Mot.").) On July 27, 2016, Church JV filed a response to the Fiberzone Motion. (Mem. in Supp. of Pl.'s Resp. to Def. Fiberzone's Mot. for Summ. J. as to Counts II, III, IV, and V of the Compl., ECF No. 164 ("Church JV Resp. to Fiberzone Mot.").) On August 10, 2016, Fiberzone filed a reply in support of the Fiberzone Motion. (Def. Fiberzone's Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 169 ("Fiberzone Reply").)

Third, on July 11, 2016, Defendants Earl Benard Blasingame ("EBB") and Margaret Gooch Blasingame ("MGB")—collectively, "Debtors"—filed a Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Motion for Summary Judgment. (ECF No. 158 ("EBB/MGB Mot.").)

Church JV filed a response to the EBB/MGB Motion on August 8, 2016. (Pl.'s Resp. to Defs. EBB and MGB's Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J., ECF No. 166 ("Church JV Resp. to EBB/MGB Mot.").) On August 22, 2016, Debtors filed a reply in support of the EBB/MGB Motion. (Defs. EBB and MGB's Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 172 ("EBB/MGB Reply").)

Fourth, on July 11, 2016, Defendant Blasingame Family Residence Generation Skipping Trust ("BFRGST") filed a Motion for Summary Judgment as to Counts II, III, IV, and V of the Complaint and for Partial Dismissal Pursuant to Rule 12(b)(1) as to ¶ 24(a) of the Complaint. (ECF No. 159 ("BFRGST Mot.").) On August 8, 2016, Church JV filed a response to the BFRGST Motion. (Pl.'s Resp. to Def. BFRGST's Mot. for Summ. J. as to Counts II, III, IV, and V of the Compl. and for Partial Dismissal Pursuant to Rule 12(b)(1) as to ¶ 24(a) of the Compl., ECF No. 165 ("Church JV Resp. to BFRGST Mot.").) BFRGST filed a reply on August 22, 2016. (Def. BFRGST's Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. R. 12(b)(6) and, in the Alternative, Mot. for Summ. J., ECF No. 170 ("BFRGST Reply").)

Fifth, on July 11, 2016, Defendant Blasingame Family Business Investment Trust ("BFBIT") filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and, in the Alternative,

for Summary Judgment as to Counts II, III, IV, and V of the Complaint. (ECF No. 160 ("BFBIT Mot.").) Church JV filed a response on August 8, 2016. (Resp. to Def. BFBIT's Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6) [*sic*] and, in the Alternative, Mot. for Summ. J. as to Counts II, III, IV, and V of the Compl., ECF No. 167 ("Church JV Resp. to BFBIT Mot.").) On August 22, 2016, BFBIT filed a reply in support of the BFBIT Motion. (Def. BFBIT's Reply to Pl.'s Resp. to Def. BFBIT's Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6) [*sic*] and, in the Alternative, Mot. for Summ. J., ECF No. 171 ("BFBIT Reply").)

Sixth, on October 12, 2016, Church JV filed a Motion for Status Conference and/or Hearing on Pending Motions. (ECF No. 174 ("Mot. for Status Conference").) Defendants filed a joint response to the Motion for Status Conference on October 13, 2016. (Defs.' Resp. to Pl.'s Mot. for Status Conference and/or Hr'g on Pending Mots., ECF No. 176 ("Defs.' Resp. to Mot. for Status Conference").)

The Motion for Status Conference is DENIED. The KBC/EBB Jr. Motion is GRANTED, but Church JV may make one limited amendment to the Amended Complaint addressing EBB Jr. The Fiberzone Motion, the EBB/MGB Motion, and the BFRGST Motion are GRANTED in part and DENIED in part. The BFBIT Motion is DENIED.

## I. BACKGROUND

On November 16, 2012, Church JV filed its Original Complaint. (ECF No. 1 ("Original Compl.").) The Original Complaint's gravamen was that Debtors took numerous actions to shield assets from creditors in Debtors' bankruptcy. (See generally id.)

The Original Complaint asserted five causes of action.[2] First, Church JV sought a declaration that various Defendant entities "have effectively lost their independent status . . . and have been and are now being used as devices and artifices exclusively to hinder, delay and defraud Church JV." (Id. ¶ 84.) Church JV further asserted that those entities' assets "should be considered the assets of Debtors and made available to satisfy the claims of Debtors' creditors." (Id. ¶ 83; see also id. ¶ 81.) Second, Church JV asked the Court to "set aside and avoid" certain "transfers of assets and property by and between" Debtors and these various entities. (Id. ¶¶ 87–88.)[3] Third, Church JV sought an injunction restricting Debtors and "entities in which they are closely aligned and involved" from

---

[2] The Court will generally use "causes of action" to refer to the various theories of liability and/or relief in Church JV's complaints (e.g., fraudulent conveyance). The Court will generally use "claims" to refer to specific sets of allegations that may make a Defendant or Defendants liable pursuant to a given cause of action (e.g., a specific set of allegations purportedly constituting a fraudulent conveyance).

[3] The Court will refer to claims rooted in this second cause of action as "fraudulent-conveyance claims."

"making any further transfers of assets." (Id. ¶ 91.) Fourth, Church JV sought a court order "direct[ing] Defendants, as well as any other entities in which they have control or a controlling interest, to provide to Church JV . . . a full and proper accounting of all assets held by them throughout their existence and all subsequent transfers of property, real or personal, by them, as well as any other entity which they control or [in which they] have a controlling interest." (Id. ¶ 95.) Fifth, Church JV sought recovery of its "reasonable and necessary attorneys' fees incurred in prosecuting this action," "pre-judgment and post-judgment interest," and "recovery of all costs of court." (Id. ¶¶ 97-98.)

On February 1, 2013, Defendants filed a motion to dismiss the Original Complaint. (Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and (6) and, in the Alternative, Mot. for Partial J. on the Pleadings, ECF No. 16 ("First Mot. to Dismiss").) Church JV filed a response on March 4, 2013. (Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 24.) On April 1, 2013, Defendants filed a reply in support of their motion. (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rules 12(b)(1) and (6) and, in the Alternative, Mot. for Partial J. on the Pleadings, ECF No. 30.) On April 19, 2013, with the Court's permission, Church JV filed

a surreply.  (Pl.'s Surreply to Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 41.)

On June 14, 2013, Church JV filed its First Amended Original Complaint.  (ECF No. 81 ("Am. Compl.").)  This is the presently operative complaint.  The Amended Complaint adds details about allegedly problematic transfers.  (See generally id.)  It retains the Original Complaint's five causes of action.  (Compare Original Compl. ¶¶ 80–98 with Am. Compl. ¶¶ 93–111.)  It also removes one Defendant and adds Aqua Dynamic Systems, Inc. as a new Defendant.  (See, e.g., Am. Compl. ¶ 15.)

On June 19, 2013, Church JV filed a motion for leave to file the Amended Complaint.  (Pl.'s Mot. for Leave to File First Am. Compl., for Voluntary Dismissal of Action Against One Def., and or [sic] Leave to Join Additional Party-Def., ECF No. 83.)  On August 29, 2013, Church JV filed an additional response to the First Motion to Dismiss.  (Pl.'s Supp. Resp. to Defs.' Mot. to Dismiss, Combined with Request for Leave to File if Necessary, ECF No. 92.)

On September 27, 2013, the Court entered an Order addressing, inter alia, the First Motion to Dismiss.  (ECF No. 98.)  The order denied that part of the First Motion to Dismiss based on Rule 12(b)(1).[4]  (Id. at 3-4.)  It granted leave to file

---

[4] Unless otherwise noted, references to "Rule __" are to the Federal Rules of Civil Procedure.

the Amended Complaint.  (Id. at 5.)  It also denied as moot that part of the First Motion to Dismiss based on Rule 12(b)(6), "without prejudice to Defendants' right to file a renewed motion addressing the amended complaint."  (Id.)

On October 11, 2013, Defendants filed a motion to dismiss the Amended Complaint.  (Defs.' Mot. to Dismiss Firt [*sic*] Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J., ECF No. 100 ("Second Mot. to Dismiss").)  Church JV filed a response on November 22, 2013. (Pl.'s Resp. to Defs.' Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J., ECF No. 104.)  On December 13, 2013, Defendants filed a reply in support of the Second Motion to Dismiss.  (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. Rules [*sic*] 12(b)(6) and, in the Alternative, Mot. for Summ. J., ECF No. 105.)  Church JV filed a Court-permitted surreply on January 3, 2014, and Defendants filed a Court-permitted sur-surreply on January 17, 2014. (Pl.'s Sur-Reply to Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss and, in the Alternative, Mot. for Summ. J., ECF No. 108; Defs.' Sur-Sur Reply to Pl.'s Sur Reply to Defs.' Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss and, in the Alternative, Mot. for Summ. J., ECF No. 110.)

On January 20, 2014, the parties filed an Agreed Motion to Refer Action to Mediation. (ECF No. 111.) They asked the Court to "direct that [this proceeding's] issues, actions, and claims . . . proceed to mediation together with" related matters already referred to mediation by the United States Bankruptcy Court for the Western District of Tennessee. (Id. ¶ 3.) The Court granted this motion on January 23, 2014. (Order Granting Mot. to Refer Action to Mediation, ECF No. 112.) On April 24, 2014, the parties notified the Court that, notwithstanding a three-day mediation, they "[had] not been able to resolve the claims arising in this proceeding." (Jt. Not. Concerning Mediation 1, ECF No. 115.)

In a telephone status conference on July 25, 2014, Church JV indicated that it was "still in trial" on matters associated with Debtors' bankruptcy. (Mins., ECF No. 125.) Later that day, the Court entered an order staying proceedings in the present matter. (Order Staying Proceedings, ECF No. 126.) On April 7, 2015, after briefing by the parties, the Court entered an Order Reopening Case. (ECF No. 134.)

On January 4, 2016, the Court entered an order addressing the Second Motion to Dismiss. (Order, ECF No. 144.) The order stated that a limited partnership's citizenship is "'determined by the citizenship of all of its partners' at the time of the complaint," but that Church JV "[had] not provided information

as to the citizenship of any of its partners." (Id. at 3 (quoting Maiden v. N. Am. Stainless, L.P., 125 F. App'x 1, 3–4 (6th Cir. 2004).) The Court ordered Church JV "to submit evidence sufficient to establish its citizenship for jurisdictional purposes not later than January 14, 2016." (Id.) Church JV provided the needed information on January 7, 2016. (Notice of Compliance with Ct. Order, ECF No. 145 ("Not. of Compliance").)

On January 13, 2016, the Court entered a second order addressing the Second Motion to Dismiss. (Order, ECF No. 146 ("January 13, 2016 Order").) Section IV.A of the January 13, 2016 Order addressed the Amended Complaint's first cause of action. (Id. at 18–22.) The Court found that "[t]here is no authority under Tennessee law for reverse piercing the corporate veil outside the parent-subsidiary context." (Id. at 20–21.) As a result, "the alter-ego claims against Defendant Trusts and Corporations are DISMISSED." (Id. at 22.)

Section IV.B of the January 13, 2016 Order addressed the Amended Complaint's second cause of action. (Id. at 22–28.) The order divided the analysis between "transfers of property between Debtors and Defendant Trusts and Corporations" and "transfers solely among Defendant Trusts and Corporations." (Id. at 23.)

Addressing transfers solely among the Defendant Trusts and Corporations, the Court concluded that "Church is not a creditor of any of [the] Trusts and Corporations," and that "[i]t has not successfully asserted alter-ego claims against them." (Id.) The Court held that, as to those transfers, the Amended Complaint failed to state a claim for which Tennessee fraudulent-conveyance law permitted relief. (Id. at 23–24.) The Court dismissed those claims. (Id. at 24.)

Addressing transfers between Debtors and the Defendant Trusts and Corporations, the Court distinguished the various Defendant Trusts and Corporations. (Id. at 24–28.) "As to transactions between Debtors and [the Blasingame Trust], [Blasingame Farms, Inc.], [GF Corporation], and [Aqua Dynamic Systems, Inc.]," the Court determined that the Amended Complaint does "not provide[] the minimal factual support required to establish 'a claim to relief' under Tennessee avoidance law 'that is plausible on its face.'" (Id. at 24 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).) The Court dismissed those fraudulent-conveyance claims. (Id.)

Addressing transfers between Debtors and BFRGST, BFBIT, Flozone Services, Inc. ("Flozone"), and Fiberzone, the Court held that the Amended Complaint did "allege[] with sufficient particularity a series of fraudulent transfers." (Id. at 25–26 (citing Am. Compl. 5–7, 8–11, 18–22).) The Court also

considered those transfers under a summary-judgment standard. (Id. at 26–28.)  The Court determined that, as to transfers to BFRGST, BFBIT, and Fiberzone, Church JV had put forward sufficient evidence to survive summary judgment. (Id.)  As to Flozone transfers, the Court determined that Church JV had "failed to adduce concrete evidence on which a reasonable juror could return a verdict in its favor." (Id. at 26.)  The Court granted summary judgment in Defendants' favor on the fraudulent-conveyance claims against Flozone, but denied summary judgment on the fraudulent-conveyance claims against BFRGST, BFBIT, and Fiberzone.

Section IV.B.4 addressed the Amended Complaint's third, fourth, and fifth causes of action. (Id. at 29–30.)  The Court concluded that those causes of action "depend on the success of" Church JV's first and second causes of action. (Id. at 29.) The Court thus denied Defendants' motion on those causes of action. (Id. at 30.)

On January 27, 2016, the remaining Defendants filed answers to the Amended Complaint. (Answer of EBB, MGB, BFBIT, BFRGST, and Fiberzone to First Am. Original Compl., ECF No. 149 ("Primary Answer"); Answer of EBB Jr. and KBC to First Am. Original Compl., ECF No. 150 ("KBC/EBB Jr. Answer").)

On February 10, 2016, the Court entered a Scheduling Order. (ECF No. 154.)  That Order set a discovery deadline of June 10,

2016, and a dispositive-motion deadline of July 11, 2016.  (<u>Id.</u> at 1.)  It also scheduled a pretrial conference for 9:30 a.m. on November 18, 2016, and a trial date (for a three-day trial) on November 28, 2016.  (<u>Id.</u>)  Between June 29, 2016, and August 22, 2016, the parties briefed the five dispositive motions this Order addresses.  (<u>See</u> Introduction above.)

On October 12, 2016, Church JV filed its Motion for Status Conference.  It asks the Court to "set an expedited status conference and/or hearing on [the] pending motions to dismiss and/or for summary judgment."  (<u>Id.</u> ¶ 6.)  If the Court sets a hearing, Church JV also asks that the "trial of the action be postponed until at least 30 days after the Court rules on the pending motions . . . to enable the parties to prepare for trial on remaining issues."  (<u>Id.</u>)  Defendants filed a response to the motion on October 13, 2016.  Defendants agree that the Court should "set an expedited pretrial status conference as to the pending motions."  (Defs.' Resp. to Mot. for Status Conference ¶ 4.)  Defendants suggest that oral argument on the pending motions is unnecessary.  (<u>Id.</u> ¶ 5.)

## II.  JURISDICTION AND CHOICE OF LAW

### A.  Jurisdiction

This Court has diversity jurisdiction under 28 U.S.C. § 1332.  Church JV is a limited partnership.  (Am. Compl. ¶ 2.) "For purposes of determining diversity jurisdiction, a limited

partnership is deemed to be a citizen of every state where its general and limited partners reside." Hooper v. Wolfe, 396 F.3d 744, 748 (6th Cir. 2005) (emphasis removed) (citing cases). Church JV has one general partner, an Ohio corporation with its principal place of business in Newton Falls, Ohio, and one limited partner, an Ohio resident. (Notice of Compliance 1.) For purposes of determining diversity jurisdiction, Church JV is a citizen of Ohio.

EBB, MGB, KBC, and EBB Jr. are citizens of Tennessee. (Am. Compl. ¶¶ 4-7; Primary Answer ¶¶ 4-5; KBC/EBB Jr. Answer ¶¶ 6-7.) Fiberzone is a corporation, but the Tennessee Secretary of State has no record of its existence. (Am. Compl. ¶ 12; Primary Answer ¶ 12.) Fiberzone's principal place of business is in Tennessee. (Am. Compl. ¶ 12; Primary Answer ¶ 12.)

A trust's citizenship is determined by its trustees' citizenship. Homfeld II, LLC v. Comair Holdings, Inc., 53 F. App'x 731, 732 (6th Cir. 2002) (citing Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464 (1980)). EBB and MGB, citizens of Tennessee, are co-trustees of BFBIT and BFRGST. (Am. Compl. ¶¶ 8-9; Primary Answer ¶¶ 8-9.)

Given the parties' various states of residence, there is complete diversity. Cf. 28 U.S.C. § 1332(a)(1).

Church alleges that the amount in controversy exceeds $75,000 against all Defendants. (See generally Am. Compl.)

"[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416 (6th Cir. 1996). The requirements of diversity jurisdiction are satisfied.

**B.   Choice of Law**

In diversity actions, state substantive law governs. See, e.g., Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In diversity actions, a federal court applies the choice-of-law provisions of the state in which it sits. Id.; Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998) ("It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state.") (citing cases). When "all parties have acquiesced—without comment"—to the application of a particular state's law, the Court will not "delve too deeply" into choice-of-law analysis. GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998); see also In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("Unlike jurisdictional issues, courts need not address choice of law questions sua sponte."). Following the January 13, 2016 Order, the bulk of Church JV's remaining claims assert attempts to avoid transfers made by Defendants. Church JV invokes Tennessee avoidance law. (See,

e.g., Am. Compl. ¶ 101.) Defendants do not challenge the application of Tennessee avoidance law. The Court will apply Tennessee substantive law.

### III. STANDARD OF REVIEW

Defendants' motions seek dismissal and/or summary judgment.

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Under Rule 8(a)(2), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) requires the court to "treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party." Coley v. Pennakem, LLC, No. 09-2780-STA, 2010 WL 2197821, at *1 (W.D. Tenn. May 28, 2010).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). "'To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim.'" Wright v. Memphis Police Ass'n, Inc., No. 14-2913-STA-

dkv, 2015 WL 3407358, at *4 (W.D. Tenn. May 26, 2015) (quoting Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003)).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court stated a two-prong test for analyzing Rule 12(b)(6) motions. First, the reviewing court should consider whether allegations are merely "legal conclusions" and, if so, disregard them when ruling on the motion. Id. at 678. Second, the court should evaluate the remaining well-pled facts and determine whether they give rise to a "plausible claim for relief." Id. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Courts in the Sixth Circuit read this rule liberally, requiring a plaintiff to, at a minimum, 'allege the

time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Moore v. It's All Good Auto Sales, Inc., 907 F. Supp. 2d 915, 922 (W.D. Tenn. 2012) (quoting Advocacy Org. for Patients and Providers v. Auto Club Ass'n, 176 F.3d 315, 322 (6th Cir. 1999)).

Rule 56(a) provides that a party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and "show[] that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." The court must view the record in the light most favorable to the nonmoving party. Loyd v. St. Joseph Mercy Oakland, 766 F.3d 580, 588 (6th Cir. 2014).

To overcome a properly supported summary-judgment motion, the nonmoving party must set forth specific facts showing that there is a "genuine" dispute for trial. Fed. R. Civ. P. 56(c). A "genuine" dispute exists when the nonmoving party presents "significant probative evidence" "on which a reasonable jury could return a verdict for [it]." E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The court does not have the duty to search the record for such evidence. See,

e.g., <u>Meachem v. Memphis Light, Gas & Water Div.</u>, 119 F. Supp. 3d 807, 813 (W.D. Tenn. 2015) (citing Fed. R. Civ. P. 56(c)(3); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" <u>Ford Motor Co.</u>, 782 F.3d at 770 (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

Courts must use summary judgment carefully, but when appropriate, it is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>F.D.I.C. v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. ANALYSIS**

**A. Motion for Status Conference**

The motion for a hearing on the pending dispositive motions is DENIED. The Court has resolved the dispositive motions without oral argument.

The motion for an expedited status conference is DENIED. This Order resolves all of Defendants' dispositive motions. Any remaining matters can be resolved at the pretrial conference on

November 18, 2016.  (Notice of Setting, ECF No. 153 ("Notice of Setting").)

### B.  KBC/EBB Jr. Motion

The KBC/EBB Jr. Motion contends that, "[a]lthough [KBC and EBB Jr.] sought dismissal of any claims asserted against them in the [Second] Motion to Dismiss, the Court's order of January 13, 2016 did not specifically address the motion as it relates to KBC or EBB, Jr."  (KBC/EBB Jr. Mot. ¶ 4.)  KBC and EBB Jr. argue that, under the Twombly/Iqbal dismissal standards, the Amended Complaint's allegations against them are insufficient.  (Mem. in Supp. of Defs. KBC and EBB Jr.'s Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. Rule 12(B)(6) at 7-8, ECF No. 155-1 ("Mem. ISO KBC/EBB Jr. Mot.").)

Church JV responds that the Second Motion to Dismiss "sought dismissal of all claims against [KBC and EBB Jr.] as asserted in the Complaint."  (Mem. in Supp. of Pl.'s Resp. to Defs. KBC and EBB Jr.'s Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. Rule 12(b)(6) ¶ 8, ECF No. 162 ("Mem. ISO Church JV Resp. to KBC/EBB Jr. Mot. to Dismiss").)  Church JV argues that the Court granted KBC and EBB Jr.'s component of the Second Motion to Dismiss, such that "[a]ll claims asserted . . . against KBC and [EBB Jr.] were dismissed." (Id. ¶ 9.)

That would seem to end the matter. Church JV argues, however, that the Court should treat the KBC/EBB Jr. Motion as a summary-judgment motion. (Id. ¶¶ 14–16.) Citing its own discovery responses, Church JV contends that fact issues exist such that the Court, treating that KBC/EBB Jr. Motion as one for summary judgment, should deny it. (Id. ¶¶ 18–28.) In the alternative, Church JV argues that, if the Court grants the KBC/EBB Jr. Motion, it should do without prejudice and grant Church JV leave to amend the Amended Complaint. (Id. ¶¶ 29–31.)

KBC and EBB Jr. reply that "the Court should not permit the party opposing a Rule 12(b)(6) motion to unilaterally convert the motion to a summary judgment motion." (KBC/EBB Jr. Reply 2.) They also argue that any dismissal should be with prejudice and that the Court should not grant Church JV leave to amend the Amended Complaint. (Id. at 5–6.)

The first threshold issue is how the Second Motion to Dismiss and the January 13, 2016 Order affect the KBC/EBB Jr. Motion. The Second Motion to Dismiss argued that the Court should dismiss any fraudulent-conveyance claims against KBC or EBB Jr. (Second Mot. to Dismiss 45.) The January 13, 2016 Order did not address that argument, but did consider arguments about fraudulent-conveyance claims against other Defendants.

Church JV's argument that the January 13, 2016 Order dismissed the fraudulent-conveyance claims against KBC and EBB

Jr. is not well taken. Although the January 13, 2016 Order dismissed fraudulent-conveyance claims against entities, it did so specifically. (See, e.g., January 13, 2016 Order 23-24.) The Order did not discuss the fraudulent-conveyance claims against KBC and EBB Jr.

A district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment. See, e.g., Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 118 F. App'x 942, 946 (6th Cir. 2004). Under Rule 54(b), "any [interlocutory] order or decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

The Court clearly erred by failing to address whether the Amended Complaint properly pleads fraudulent-conveyance claims against KBC and/or EBB Jr. Thus, the Court will consider the arguments in the KBC/EBB Jr. Motion.

A second threshold issue is whether Church JV's introduction of interrogatory responses in its response to the KBC/EBB Jr. Motion should convert that motion into one for summary judgment. Church JV quotes Rule 12(d) for the proposition that, "'[i]f, on a motion under 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" (Mem. ISO Church JV Resp. to KBC/EBB Jr. Mot. ¶ 15 (quoting Fed. R. Civ. P. 12(d).) Church JV then quotes at length its responses to interrogatories served by KBC and EBB Jr. (See generally id. ¶¶ 20-27.)

Relying on "matters outside the pleadings" ordinarily converts a dismissal motion into a summary-judgment motion. Fed. R. Civ. P. 12(d); Swanigan v. Nw. Airlines, Inc., 718 F. Supp. 2d 917, 922 (W.D. Tenn. 2010) (converting Rule 12 motion into Rule 56 motion, in part because party filed affidavit in support). This case presents a variant on the issue: should a court convert a motion to dismiss into a summary-judgment motion because the plaintiff introduced materials outside the pleadings, where the defendant has not introduced those materials and asks the Court not to treat the motion as one for summary judgment?

The Court has found no binding Supreme Court or Sixth Circuit precedent on point. The better approach is not to treat

the motion as one for summary judgment.  *See, e.g.,* Alexander Assocs., Inc. v. FCMP, Inc., No. 10-12355, 2012 WL 1033464, at *7 (E.D. Mich. Mar. 27, 2012) (quoting Collins v. Palczewski, 841 F. Supp. 333, 334 (D. Nev. 1993)).  This is particularly true where, as here, the Court neglected to address KBC and EBB Jr.'s earlier dismissal arguments.  Because the Court will review the KBC/EBB Jr. Motion as one for dismissal, it will not consider the materials outside the pleadings presented by Church JV.  *See, e.g.,* Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co., 618 F. App'x 246, 255 (6th Cir. 2015).

The second cause of action in the Amended Complaint alleges that various transfers of Debtors' assets "were with the specific intent, direct or indirect, of delaying, hindering, or defrauding Church JV and other creditors and, therefore, were fraudulent conveyances and devices within the meaning of applicable Tennessee avoidance law . . . and subject to being avoided for the benefit of Church JV . . . and should be set aside and avoided by the Court."  (Am. Compl. ¶ 101.)  Parties with fraudulent-conveyance claims under Tennessee law must plead them with particularity under Rule 9(b).  *See, e.g.,* Eastwood v. United States, No. 2:06-CV-164, 2007 WL 2815560, at *4 (E.D. Tenn. Sept. 25, 2007).

As to KBC, the Amended Complaint alleges the following:

1) KBC is Debtors' daughter. (Am. Compl. ¶ 54.)

2) KBC "is purported to be the President of [Flozone] and owns 100% of its issued common stock." (Id. ¶ 55.)

3) "Debtors claim that KBC delegated all business and financial decisions of [Flozone] to her father . . . ." (Id. ¶ 58.)

4) KBC cannot "adequately account for or explain the amount KBC paid for her stock in [Flozone] or how she acquired that stock," and "[n]o stock has been issued." (Id. ¶ 59.)

5) KBC "is not materially or significantly involved in the business of [Flozone]," "has not made any independent business decisions for [Flozone]," "does not run the business of [Flozone]," and has "turned all of the financial and business operations of [Flozone] over to her father . . . ." (Id. ¶¶ 60, 64-66.)

6) KBC is the owner of Fiberzone. (Id. ¶ 73.)

The January 13, 2016 Order determined that Church JV's "fraudulent transfer claim against Flozone . . . can be disposed of on summary judgment." (January 13, 2016 Order 26.[5]) The

_____

[5] The January 13, 2016 Order stated:

Church alleges that "Debtors loaned [Flozone] not less than $225,000" without adequate consideration. Church has adduced no evidence to support that allegation, despite voluminous and lengthy discovery, numerous depositions, and multiple opportunities for response. Church has not specifically alleged any other transfers of assets from Debtors to Flozone. Church has failed to adduce concrete evidence on which a reasonable juror could return a verdict in its favor. As to the transfer from Debtors to Flozone, Defendants' Motion for Summary

Flozone-related allegations about KBC cannot be the basis for a fraudulent-conveyance claim against KBC.

The Amended Complaint's only remaining KBC-related allegations are that she is Debtors' daughter and that she owns Fiberzone. The January 13, 2016 Order stated that Church JV "has set forth specific evidence showing a material dispute about the allegedly fraudulent transfers of . . . liabilities from Fiberzone to Debtors." Id. The Amended Complaint fails to plead with particularity any fraudulent transfer between Debtors and KBC. It makes no such transfer allegations at all. The KBC/EBB Jr. Motion is GRANTED as to KBC.

The Amended Complaint alleges that EBB Jr. is "an adult resident and citizen of the State of Tennessee . . . ." (Am. Compl. ¶ 7.) No other allegations specifically refer to EBB Jr.

There are, however, several allegations that suggest transfers to Debtors' son. For example, the Amended Complaint alleges:

> 1) "A monthly average of $5,877 was deposited into [MGB's] household account (Community South account #11048972) and spent for personal living expenses from various sources including transfers from all the Trusts and Corporations and from a commingled 'clearing account' (BancorpSouth account #87822680) into which hundreds of thousands of dollars from multiple sources are

---

Judgment on Church's avoidance claims is GRANTED.

(January 13, 2016 Order 26.)

deposited each year. This clearing account is concealed from creditors in the son's name, E. B. Blasingame, Jr., although the son appears never to have written or signed a check and over which the Debtors exert full control and exercise single signatory authority." (<u>Id.</u> ¶ 81(a).)

2) "The Debtors now admit to having created a 'clearing account' . . . established in the name of their son, into which they regularly commingle funds from every source—individual funds, Trust funds and Corporate funds. Initially, the Debtors asserted that they established this 'clearing account' to permit their bookkeeper, Joyce Long, to write checks because she supposedly could not write checks on the Trust accounts. Subsequently, the Debtors now admit that their bookkeeper was, in fact, signatory on all the Trust accounts and continued to write checks on all the Trust accounts, before and after this 'clearing account' was established. Thus, this BancorpSouth account operated as a depository into which individual funds, Trust funds and Corporate income were regularly 'commingled,' safe from creditors under their son's name, and then disbursed to or for the benefit of the Debtors." (<u>Id.</u> ¶ 84(a).)

3) "As further evidence of Debtors' conscious scheme to utilize the Trusts and Corporations to defraud creditors is the account at BancorpSouth . . . — the so-called 'Clearing Account'—which was opened in the name of Debtors' son in order that its contents be safe from levy. Funds belonging to each of the Trusts, each of the Corporations and from one or more of the ten (10) separate bank accounts in Debtors' own names were and still are deposited, transferred back and forth as needed into the Clearing Account." (<u>Id.</u> ¶ 91.)

Church JV has alleged with sufficient particularity fraudulent transfers by Debtors to their son. (Am. Compl. ¶¶ 81, 84, 91.) Church JV has alleged Debtors' fraudulent intent for these transactions, alleging badges of fraud

including secrecy, interrelationships, and retained interests. That is enough to comply with Rule 9(b)'s standard. Church JV has provided "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 554–56.

The Amended Complaint, however, does not directly allege that EBB Jr. is Debtors' son. As noted above, this Court generally may not consider materials outside the pleadings in deciding a Rule 12(b)(6) motion.

KBC and EBB Jr. are correct that the Amended Complaint's only allegation against EBB Jr. is that he is a Tennessee resident and citizen. Without more, that is insufficient to state a fraudulent-conveyance claim. The KBC/EBB Jr. Motion to Dismiss is GRANTED as to EBB Jr.

Church JV argues that, if the Court grants the KBC/EBB Jr. Motion, any dismissal should be without prejudice and the Court should grant leave to amend the Amended Complaint "to add the allegations" of fraud that Church JV discusses in its response relying on material outside the pleadings. (Mem. ISO Church JV Resp. to KBC/EBB Jr. Mot. ¶ 29.) KBC and EBB Jr. argue that dismissal under Rule 12(b)(6) "is a judgment on the merits and is therefore with prejudice." (KBC/EBB Jr. Reply 5.) They also argue that Church JV's request to amend the Amended Complaint is untimely given this case's procedural history. (Id. at 5–6.)

KBC and EBB Jr. are correct: dismissals under Rule 12(b)(6) are judgments on the merits, and thus are with prejudice. Pratt v. Ventas, Inc., 365 F.3d 514, 522 (6th Cir. 2004) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981)). The KBC/EBB Jr. Motion is GRANTED with prejudice. The Court, however, has the inherent power to modify interlocutory orders before entry of a final judgment.

Rule 15(a) governs Church JV's request to amend the Amended Complaint. Rule 15(a)(2) provides, in pertinent part, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 551 (6th Cir. 2008) (citing cases). The district court has discretion about whether to grant leave. Id. Courts may consider a number of factors, including undue delay, bad faith, undue prejudice, futility of amendment, or repeated failure to cure deficiencies by previous amendments. Foman v. Davis, 371 U.S. 178, 182 (1962).

"Allowing an amendment after discovery is closed and summary judgment motions are 'fully briefed' imposes significant prejudice on defendants. . . . Further, '[w]hen amendment is

sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.'" Siegner v. Twp. of Salem, No. 15-2063, 2016 WL 3426092, at *3 (6th Cir. June 22, 2016) (quoting Sixth Circuit cases); see also Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) (citing cases).

Based on these factors and for the following reasons, the Court DENIES Church JV's request to amend the Amended Complaint with one exception. First, Church JV requested leave to amend well after the close of discovery, after the dispositive-motion deadline, and with trial less than four months away. (See generally Notice of Setting.) Permitting amendment now would prejudice KBC and EBB Jr.

Second, as Siegner specifies, when a party seeks leave to amend late in litigation, "there is an increased burden to show justification for failing to move earlier." 2016 WL 3246092, at *3. Church JV provides no justification for failing to move earlier. (See generally Mem. ISO Church JV Resp. to KBC/EBB Jr. Mot.) That is particularly problematic because Church JV was aware in January 2014 of the information it now wants to add to the Amended Complaint. (See Mem. ISO Church JV Resp. to KBC/EBB Jr. Mot. ¶ 18 (noting that Church JV served relevant discovery responses on January 3, 2014).)

Third, some of the amendments Church JV suggests would be futile. For example, Church JV suggests that it might add, in a Second Amended Complaint, allegations of transfers from Debtors to (1) the Katherine Blasingame 1993 Generation Skipping Trust, and (2) the Earl Benard Blasingame Jr. 1993 Generation Skipping Trust. (<u>Id.</u> ¶¶ 20(a), 21(a).) Those transfers were not to KCB or EBB Jr., but to distinct trusts. Even if the Court allowed Church JV to amend the complaint to add these new allegations, the resulting pleading would not state a claim as to KBC or EBB Jr.

The one amendment the Court will allow is minor: Church JV may, if it chooses, amend the Amended Complaint to state that EBB Jr. is Debtors' son. That amendment would not prejudice EBB Jr. because, assuming that he is Debtors' son, he has known about the allegations against him at least since Church JV filed the Amended Complaint. The amendment would not be futile because allegations in the Amended Complaint about Debtors' son are sufficient to state a claim.[6]

---

[6] If Church JV elects to amend the Amended Complaint, it should file a short document (one or two pages) that provides the text of an amended Paragraph 7. The deadline for this filing is three days from the date of this Order. If Church JV makes this filing, EBB Jr. will have three days from the date of Church JV's filing to submit a short document (one or two pages) answering, pursuant to Rule 8(b), the allegations in amended Paragraph 7. The parties should not make substantive arguments to the Court in these filings. If EBB Jr. admits that he is

All fraudulent-conveyance claims against KBC and EBB Jr. are DISMISSED. The January 13, 2016 Order decided that the Amended Complaint's third, fourth, and fifth causes of action "depend on the success" of causes of action that no longer apply to KBC or EBB Jr. (January 13, 2016 Order at 29.) It follows that there are no remaining causes of action against KBC or EBB Jr. The KBC/EBB Jr. Motion is GRANTED.

## C. Fiberzone Motion

Fiberzone argues that the only claims against it that survive the January 13, 2016 Order are the allegations (1) "that [MGB] incurred obligations to her credit card companies for charges made on her credit card for the benefit of [Fiberzone], and (2) "that [EBB] provided consulting services [to Fiberzone] for no consideration." (Mem. ISO Fiberzone Mot. for Summ. J. as to Counts II–V of the Compl. 5, ECF No. 156-1 ("Mem. ISO Fiberzone Mot.").) Addressing the credit-card claim, Fiberzone argues that "the undisputed facts are that any charges incurred by [Fiberzone] on credit cards belonging to [MGB] were paid for by [Fiberzone], [Flozone] or reimbursed to [MGB]." (Id. at 9.) Fiberzone argues that "[t]here is no proof that [MGB] paid any of the charges incurred by [Fiberzone]." (Id. at 10.) Addressing the consulting-services claim, Fiberzone argues that

---

Debtors' son, then EBB Jr. will remain a Defendant in this proceeding.

"a debtor who provides uncompensated services does not transfer 'property' within the meaning of the UFTA." (Id. at 7 (citing cases).)

Church JV responds that Fiberzone's arguments were presented to the Court in the Second Motion to Dismiss and rejected in the January 13, 2016 Order. (Church JV Resp. to Fiberzone Mot. ¶¶ 13–15.) Church JV also points to a November 2013 deposition of KBC and to Church JV's responses to interrogatories, arguing that they create factual disputes making summary judgment inappropriate. (Id. ¶¶ 16–19.)

Fiberzone replies that Church JV has failed to show any genuine issues of disputed fact about the credit-card claim. (Fiberzone Reply 1–2.) Fiberzone also argues that Church JV has failed to rebut Fiberzone's legal argument on the consulting-services claim. (Id. at 2–3.) Fiberzone contends that Church JV's response impermissibly attempts to "expand the allegations of the [Amended Complaint] to assert claims not set forth in the [Amended Complaint]." (Id. at 4–5.)

The Fiberzone Motion raises issues about three transfer claims: (1) the credit-card claim, (2) the consulting-services claim, and (3) claims of transfers not raised in the Amended Complaint.

## 1. Credit-Card Claim

As to the credit-card claim, the dispositive question is how the Second Motion to Dismiss and the January 13, 2016 Order addressed that claim.

The Second Motion to Dismiss specifically argued that the credit-card allegations were insufficient to state a claim. (Second Mot. to Dismiss 26.)  Church JV responded that "[t]he allegations against [Fiberzone] are the same as those asserted against the other Defendant Trusts and Entities with which [Debtors] have been involved," and that "[t]he Bankruptcy Court found that the allegations against [Fiberzone] were plausible in light of the allegations and lack of refuting evidence." (Church JV Resp. to Second Mot. to Dismiss ¶¶ 74-75 (citing Order Denying Am. Mot. to Dismiss (Summ. J.) Filed by the Def. Corps., Montedonico v. Blasingame (In re Blasingame), Adv. Proc. 09-00482 (W.D. Tenn. May 31, 2011)) ("Bankruptcy Court Order").) The Bankruptcy Court Order, however, did not specifically discuss the credit-card claim.  (See Bankruptcy Court Order 14-15.)

Defendants' reply in support of the Second Motion to Dismiss again addressed the credit-card claim.  It argued that:

> Plaintiff's Amended Complaint, ¶ 76 does [contain] an allegation that prior to 2008, charges were made on credit cards owned by [MGB] for the benefit of [Fiberzone].  No allegation is made that [MGB], rather than

> [Fiberzone], paid those charges. As set
> forth in the Affidavit of Joyce Long, all
> such charges were paid for by [Fiberzone]
> and not by [MGB] prior to the filing of the
> Complaint. Accordingly, there is no
> transfer or obligation to avoid.

(Defs.' Reply ISO Second Mot. to Dismiss 33.) Neither Church JV's surreply opposing the Second Motion to Dismiss, nor Defendants' sur-surreply, discussed the credit-card claim further.

The January 13, 2016 Order did not dismiss the Amended Complaint's Fiberzone claims (which included the credit-card claim). (January 13, 2016 Order 25–26.) The Order determined that Church JV "has set forth specific evidence showing a material dispute about the allegedly fraudulent transfers of . . . liabilities from Fiberzone to Debtors." (Id. at 26.)

The January 13, 2016 Order did address Fiberzone's arguments about the credit-card allegations. The briefing surrounding the Second Motion to Dismiss raised Fiberzone's arguments, and the Court decided in Church JV's favor. The Court will construe Fiberzone's present motion as one for reconsideration or revision.

Under this District's Local Rules,

> A motion for revision must specifically
> show: (1) a material difference in fact or
> law from that which was presented to the
> Court before entry of the interlocutory
> order for which revision is sought, and that
> in the exercise of reasonable diligence the

> party applying for revision did not know
> such fact or law at the time of the
> interlocutory order; or (2) the occurrence
> of new material facts or a change of law
> occurring after the time of such order; or
> (3) a manifest failure by the Court to
> consider material facts or dispositive legal
> arguments that were presented to the Court
> before such interlocutory order.

L.R. 7.3(b).

Fiberzone argues that "the undisputed facts are that any charges incurred by [Fiberzone] on credit cards belonging to [MGB] were paid for by [Fiberzone], [Flozone], or reimbursed to [MGB]." (Mem. ISO Fiberzone Mot. 9.) For purposes of Local Rule 7.3(b), the gravamen of the argument appears to be that the January 13, 2016 Order "manifest[ly] fail[ed] . . . to consider material facts or dispositive legal arguments" raised in the briefing of the Second Motion to Dismiss. The arguments Fiberzone raises are not materially different from those considered in the Second Motion to Dismiss.[7] Reconsideration of the January 13, 2016 Order and its disposition of the credit-card claim is not justified. The Fiberzone Motion as to the credit-card claim is DENIED.

---

[7] Fiberzone submits a new declaration from MGB attesting, for example, that she is unaware "of any instance where credit card charges incurred by [Fiberzone] were ever paid for by me." (Decl. of MGB ¶ 1, ECF No. 156-3.) The substance of that declaration, however, duplicates the declaration of Joyce Long submitted to the Court during briefing of the Second Motion to Dismiss. (Compare id. with Aff. of Joyce Long ¶ 3, ECF No. 105-10.)

## 2. Consulting-Services Claim

The Second Motion to Dismiss argued generally that the allegations of the Amended Complaint against Fiberzone, including the consulting-services claim, failed to state a claim. (Second Mot. to Dismiss 25–26.) The Second Motion to Dismiss and the resulting briefing did not address whether uncompensated debtor-provided services were "property" for UFTA purposes. (See generally id.) To the extent Church JV argues that the January 13, 2016 Order addressed and rejected this argument, Church JV is incorrect.

Fiberzone argues that, "for Plaintiff to prevail on a claim based on uncompensated consulting services, Plaintiff must demonstrate that such services constitute 'property' which can be the subject of a fraudulent transfer . . . ." (Mem. ISO Fiberzone Mot. 7.) Fiberzone argues that uncompensated services are not "property" under the UFTA. (Id. at 7–8.)

The parties cite no pertinent Tennessee law, and the Court has found no Tennessee cases on point. Other jurisdictions' on-point case law agrees with Fiberzone that uncompensated services are not transferred "property." See, e.g., Bressner v. Ambroziak, 379 F.3d 478, 483 (7th Cir. 2004) ("[Appellant] provides no legal support, and this court has found none, for the conclusion that Illinois law (or any other jurisdiction) regards the value of services provided as an asset subject to

transfer under the UFTA.") (emphasis removed); Schlossberg v. Fischer (In re Fischer), 411 B.R. 247, 265-66 (Bankr. D. Md. 2009) (referring to as "majority view" principle that "'a debtor, even though insolvent, has committed no fraud in law or in fact by giving his labor away, for by doing so he has not concealed, withheld or disposed of anything on which his creditors have any claim in law or in equity'") (quoting Studds v. Fid. & Dep. Co. of Md., 267 F.2d 875, 876 (4th Cir. 1959)).

As a matter of law, the consulting-services claim does not state a claim for which this Court can grant relief.[8] The Fiberzone Motion as to the consulting-services claim is GRANTED.

### 3. Claims Not Raised in Amended Complaint

Church JV's response to the Fiberzone Motion raises at least two sets of facts that ostensibly support fraudulent-transfer claims. First, Church JV refers to various "checks written to EBB by [Fiberzone]" that "have not been identified as to reason for payment." (Church JV Resp. to Fiberzone Mot. ¶ 16.) Second, Church JV asserts that various payments from Blasingame Farms, Inc. ("BFI") to Fiberzone are linked to payments that EBB received from the U.S. Department of Agriculture. (Id. ¶ 17.) The Amended Complaint itself mentions

---

[8] Fiberzone also argues that the allegations about the consulting-services claim lack particularity. (Mem. ISO Fiberzone Mot. 6.) Because the claim fails as a matter of law for the reasons given in the text, the Court need not address that argument.

neither of these fraudulent-transfer claims.  (<u>See generally</u> Am. Compl.)

As to Fiberzone checks to EBB, Fiberzone quotes the January 13, 2016 Order:

> Although Church alleges a number of withdrawals and payouts from these Defendants to Debtors, Church has not alleged that Debtors transferred their own money or assets to these Defendants. . . . Even assuming the worst intentions, Church fails to explain how the Debtors' allegedly enriching themselves with money and assets from these Defendants would "delay, hinder, or defraud" Church as Debtors' creditor.

(Fiberzone Reply 5 (quoting January 13, 2016 Order 24; ellipses in Fiberzone Reply).)  This portion of the January 13, 2016 Order did not directly concern Fiberzone, but the Court agrees that the same logic applies here.  Church JV is not a Fiberzone creditor; "[i]t has not successfully asserted alter-ego claims against [it]."  (January 13, 2016 Order 23.)  Church JV is an EBB creditor.  The facts that Church JV presents, however, do not explain how EBB's receiving funds from Fiberzone "delay[s], hinder[s] or defraud[s]" Church JV as an EBB creditor.

As to BFI payments to Fiberzone, any fraudulent-transfer claim based on such payments fails for reasons stated in the January 13, 2016 Order.  That order concluded that, "[a]s to transfers among Defendant Trusts and Corporations," which include BFI and Fiberzone, Church JV "is not entitled to relief

under the 'fraudulent conveyances and devices' statutory scheme set forth in Tenn. Code Ann § 66-3-101 et seq." (Id. at 23 (quoting Perkins v. Brunger, 303 S.W.3d 688, 693 (Tenn. Ct. App. 2009)).) Church JV cannot bring a fraudulent-transfer claim based on BFI payments to Fiberzone.

Church JV's response asserts that EBB deposited payments from the U.S. Department of Agriculture "into an account in the name of BFI," after which BFI made payments to Fiberzone. (Church JV Resp. to Fiberzone Mot. ¶ 17(d)-(j).) As to Fiberzone, however, the payments were transfers from BFI. As the January 13, 2016 Order discusses, transfers among the various Defendant Trusts and Corporations cannot be the basis for fraudulent-transfer claims here.[9]

Fiberzone's Motion is GRANTED in part and DENIED in part. The Motion as to the credit-card claim is DENIED. That claim is the only Fiberzone-related fraudulent-transfer claim remaining for trial. The Fiberzone Motion as to all other fraudulent-transfer claims against Fiberzone is GRANTED. Because a fraudulent-transfer claim remains against Fiberzone, the Court DENIES the Fiberzone Motion to the extent it seeks summary

---

[9] As to BFI, the January 13, 2016 Order dismissed the Amended Complaint's claims of transfers between Debtors and BFI, which included allegations about the Department of Agriculture payments. (January 13, 2016 Order 24, 30; see also Am. Compl. ¶¶ 34, 46, 77.) Church JV does not argue that the Court should reconsider that ruling. (See generally Church JV Resp. to Fiberzone Mot.)

judgment on the third, fourth, and fifth causes of action in the
Amended Complaint.

### D.    EBB/MGB Motion

The EBB/MGB Motion contends that, "[a]lthough [Debtors]
sought dismissal of any claims asserted against them in the
[Second Motion to Dismiss], the [January 13, 2016 Order] did not
specifically address the motion as it relates to [Debtors]."
(EBB/MGB Mot. ¶ 4.)  Debtors argue that the Amended Complaint
lacks particularized allegations of property transfers to them
(as opposed to transfers from them).  (Mem. in Supp. of Defs.
EBB and MGB's Mot. to Dismiss First Am. Compl. Pursuant to Fed.
R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J.
5, ECF No. 158-1 ("Mem. ISO EBB/MGB Mot.").)  Debtors contend
that the Court should dismiss the fraudulent-conveyance cause of
action against them.  (Id. at 6-7.)

Debtors contend that, once the Court has dismissed the
Amended Complaint's claims against them, Debtors "are neither
necessary nor proper parties to the dismissed Counts and the
remaining litigation."  (EBB/MGB Mot. ¶ 6; see also Mem. ISO
EBB/MGB Mot. 7-10.)  Debtors also argue that, once the Court has
granted the dispositive motions filed by BFRGST, BFBIT, and
Fiberzone, "this [will] remove any remaining argument that
[Debtors] are 'proper parties.'"  (EBB/MGB Mot. ¶ 7.)

Church JV responds that the EBB/MGB Motion is confusing and that the Court should treat it as a summary-judgment motion. (Mem. in Supp. of Pl.'s Resp. to Defs. EBB and MGB's Mot. to Dismiss First Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J. ¶¶ 12, 15–17, ECF No. 166-1 ("Mem. ISO Church JV Resp. to EBB/MGB Mot.").) Church JV argues that its responses to Debtors' discovery requests "support denial of [Debtors' Motion], because they create disputes as to material issues regarding transfers by and between [Debtors] and other Defendants . . . ." (Id. ¶ 22.)

Church JV also argues that, because it alleges fraudulent transfers from Debtors to other Defendants and from other Defendants to Debtors, Debtors are "proper and necessary parties to the Action." (Id. ¶¶ 25-26.) Church JV contends that Debtors' "absence . . . from the proceedings will result in a failure of Church JV to recover of, from and through them for avoidable and fraudulent transfers made by them and to them," making Debtors "indispensable parties to the Action." (Id. ¶ 26.) Church also states that, if the Court dismisses the claims against Debtors, the dismissal should be without prejudice and that the Court should grant Church JV leave to amend the Amended Complaint. (Id. ¶¶ 28-30.)

Debtors' reply argues that Church JV's response impermissibly attempts to convert Debtors' motion into one for

summary judgment by relying on matter outside the Amended
Complaint.  (EBB/MGB Reply 3–5.)  Debtors also argue that none
of the materials on which Church JV relies in its response
identifies fraudulent transfers to Debtors.  (Id. at 5.)

Resolving the EBB/MGB Motion requires the Court to consider
how the January 13, 2016 Order addressed Defendants' present
arguments.  The Second Motion to Dismiss argued that "Church JV,
asserting the status of a judgment creditor of the [Debtor],
cannot avoid a transfer to [Debtors] by any other Defendant."
(Second Mot. to Dismiss 44.)  The January 13, 2016 Order did not
address that argument.  (See generally January 13, 2016 Order
22–28.)  For the reasons discussed in Section IV.B above, the
Court will consider Debtors' dismissal arguments and review the
EBB/MGB Motion as one for dismissal rather than summary
judgment.

As discussed above (see Section IV.B), Rule 9(b)'s
particularity requirement applies to Church JV's fraudulent-
transfer claims.  Debtors state that "no facts pled [in the
Amended Complaint] . . . state any voidable and fraudulent
transfer to the Debtors as opposed to transfers by them."  (Mem.
ISO EBB/MGB Mot. 6.)  Church JV does not point to any
allegations in the Amended Complaint that detail transfers to
Debtors.  (Mem. ISO Church JV Resp. to EBB/MGB Mot. ¶¶ 18–23.)
Church JV argues instead that its responses to Defendants'

43

discovery requests "support denial" of the EGG/KGB Motion. (Id. ¶ 22.) Church JV provides no pincites; it simply refers the Court to Exhibits 1 through 9 of Church JV's response. (Id. ¶¶ 22–23.) Those exhibits comprise approximately 600 pages of material. (See generally id. exs. 1–9.) The Court need not review this material. Cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

The Amended Complaint lacks any allegations specifying transfers to either Debtor (as opposed to transfers from the Debtors). The EBB/KGB Motion's request that the Court dismiss any claims based on fraudulent transfers to Debtors is GRANTED. For the reasons discussed in Section IV.B above, dismissal is with prejudice.

For the same reasons the Court largely denied leave to amend the Amended Complaint as to KBC and EBB Jr., leave to amend the Amended Complaint as to Debtors is DENIED. Church JV has offered no specific pleading to repair the Amended Complaint. (Mem. ISO Church JV Resp. to EBB/MGB Mot. ¶ 28.) As with the KBC/EBB Jr. Motion, the discovery-response exhibits to which Church JV points are years old. (See generally id. exs. 1–9.) Whatever the responses contain that could support claims of fraudulent transfers to Debtors (as opposed to from them), Church JV has had sufficient time to incorporate those facts into its pleadings. It may not amend the Amended Complaint now.

The remaining question arising from the KGB/EBB Motion is whether Debtors are required or permitted parties in this proceeding. Rule 19(a)(1) governs "persons required to be joined if feasible":

> (1) **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Debtors are not required parties under Rule 19(a)(1)(B). They do not "claim[] an interest relating to the subject of the action"; indeed, they disclaim any such interest. (See Mem. ISO EBB/MGB Mot. 7-8.) Debtors are necessary parties, if at all, only under Rule 19(a)(1)(A).

Debtors argue that "the Court can accord complete relief solely between the Plaintiff and . . . the alleged recipients of fraudulent conveyances from the Debtors." (Id. at 7; see also id. at 9.) That is ostensibly because Church JV's "action seeks to recover the value that these Defendants received, without fair consideration, as a result of the transfers." (Id. at 7.)

Church JV contends that Debtors are necessary parties— indeed, that they are indispensable. (Mem. ISO Church JV Resp. to EBB/MGB Mot. ¶ 26.) Church JV provides no argument, save a sentence that "the absence of [Debtors] from the proceedings will result in a failure of Church JV to recover of, from and through them for avoidable and fraudulent transfers made by them and to them." (Id.) The Court can consider joinder issues sua sponte. See, e.g., Glancy v. Taubman Ctrs., Inc., 373 F.3d 656, 676 (6th Cir. 2004) (citing 4 James Wm. Moore et al., Moore's Federal Practice § 19.02[4][b][i], at 19-27 (3d ed. 2003)).

Debtors' joinder argument is unconvincing. Church JV seeks to recover more than merely "the value that . . . Defendants received . . . as a result of" fraudulent transfers. As discussed above, the Amended Complaint contains other causes of action. The third seeks injunctive relief to prevent "further transfers of assets." (Am. Compl. ¶ 104.) The fourth seeks an accounting from "Defendants," including Debtors. (Id. ¶ 107.) The fifth seeks recovery of attorneys' fees and costs. (Id.

¶¶ 109-11.)  The January 13, 2016 Order and this Order may limit

the scope of those causes of action, but they do not eliminate

them.  Even if the first and second causes of action no longer

directly apply to Debtors, the third, fourth, and fifth do.

The January 13, 2016 Order states that the success of the

third, fourth, and fifth causes of action in the Amended

Complaint generally depends on the success of the first and

second.  (January 13, 2016 Order 29-30.)  That general

proposition does not apply to Debtors themselves.  If Church JV

were to establish fraudulent transfers from Debtors to another

Defendant, Church JV could recover attorneys' fees, in whole or

in part, from Debtors.  Liability for fraudulent transfers may

make injunctive relief against Debtors appropriate.  Debtors

cite no case law to the contrary.[10]  In Debtors' absence, the

Court cannot accord complete relief among existing parties.

Debtors are required parties under Rule 19(a)(1)(A).

Even if Debtors were not necessary parties under Rule 19,

they would be permitted parties under Rule 20.  Under Rule

20(a)(2)(B), "[p]ersons . . . may be joined in one action as

_____

[10] Debtors cite numerous cases for the proposition that, "[w]hen
a transferor completely relinquishes an interest, it is not an
indispensable party in a fraudulent transfer action."  (Mem. ISO
EBB/MGB Mot. 7-8 (citing cases).)  The issue here is not whether
Debtors are indispensable parties.  Under Rule 19(b), an
indispensable party is a required party whose absence from the
action (because it cannot feasibly be joined) dictates
dismissal.  The issue here is whether Debtors are required or
permitted parties.

defendants if . . . any question of law or fact common to all defendants will arise in the action." The fraudulent-transfer claims here present questions common to all remaining Defendants: for instance, whether evidence establishes that Debtors' intent in making various transfers to other Defendants was to evade Debtors' creditors. Debtors are permitted parties under Rule 20(a)(2)(B).

The Court GRANTS the EBB/MGB Motion as to its request to dismiss any fraudulent-conveyance claims against Debtors. No claims of fraudulent conveyances to Debtors survive for trial. The Court DENIES the EBB/MGB Motion as to its request that the Court remove Debtors from this action because they are neither necessary nor permitted parties.

### E. BFRGST Motion

BFRGST contends that the Court should grant it judgment as a matter of law on the allegations in the Amended Complaint that MGB purchased a certificate of deposit (CD). (Mem. in Supp. of Def. BFRGST's Mot. for Summ. J. as to Counts II-V of the Compl. and for Partial Summ. J. Pursuant to Rule 12(b)(1) as to ¶ 24(a) of the Compl. 8, ECF No. 159-2 ("Mem. ISO BFRGST Mot.").) BFRGST contends that the trustee overseeing Debtors' earlier bankruptcy settled the CD claim, so that Church JV could not have acquired the claim when it bought certain causes of action from the trustee. (Id.) BFRGST argues that, because there is

no factual dispute, the Court should enter summary judgment in BFRGST's favor on Church JV's allegations about certain "annuity and paycheck payments." (Id. at 8-9.) BFRGST also asserts that the Court should dismiss any claims based on Paragraph 25(a) of the Amended Complaint because the claim lacks particularity, Church JV lacks standing to bring the claim, and the claim is time-barred. (Id. at 9-12.)[11]

Church JV responds that it has standing to bring the CD claim because the trustee did not settle it. (Mem. in Supp. of Pl.'s Resp. to Def. BFRGST's Mot. for Summ. J. as to Counts II, III, IV and V of the Compl. and for Partial Dismissal Pursuant to Rule 12(b)(1) as to ¶ 24(a) of the Compl. ¶¶ 26-30, ECF No. 165-1 ("Mem. ISO Church JV Resp. to BFRGST Mot.").) Addressing the claim about annuity and paycheck payments, Church JV asserts that the proof BFRGST offers is inappropriate summary-judgment evidence. (Id. ¶¶ 32-33.) Addressing the Paragraph 25(a) claim, Church JV argues that it has standing to bring the claim, that when read in context Paragraph 25(a) is sufficiently particular, and that the claim is not time-barred. (Id. ¶¶ 35-45.)

---

[11] BFRGST initially referred to this claim as Paragraph 24(a) of the Amended Complaint, but that was incorrect. (Compare Mem. ISO BFRGST Mot. 8-10 with Am. Compl. ¶¶ 24-25(a).) BFRGST corrected this point in its reply. (BFRGST Reply 4 n.3.)

BFRGST's reply largely reiterates arguments made in the BFRGST Motion. It disputes Church JV's account of how the trustee handled the CD claim. (BFRGST Reply 2–3.) BFRGST also contends that its evidence about the annuity and paycheck payments is undisputed and merits summary judgment. (Id. at 3–4.) As to the Paragraph 25(a) claim, BFRGST asserts that Church JV cannot show that it bought the claim and that neither relation-back nor equitable tolling can save the claim from being time-barred. (Id. at 4–9.)

### 1. CD Claim

The gravamen of BFRGST's CD-claim argument is that, because Debtors' bankruptcy trustee settled the claim, Church JV could not have bought it from the trustee. As it does elsewhere, Church JV argues that the Second Motion to Dismiss raised this argument and that the January 13, 2016 Order rejected it. (Mem. ISO Church JV Resp. to BFRGST Mot. ¶ 9.) The Second Motion to Dismiss did raise the argument. (See Second Mot. to Dismiss 14.) The January 13, 2016 Order did not specifically address it.

BFRGST's argument turns on whether prior bankruptcy proceedings resolved the CD claim. That turns on how to interpret various motions and orders in the bankruptcy proceedings. In one adversary proceeding in the bankruptcy, the trustee sued BFRGST, MGB, and Community South Bank. (See

_generally_ Compl. to Avoid Fraudulent Conveyance, for Injunction, and for an Accounting, Montedonico v. Blasingame Family Residence Generation Skipping Trust (In re Blasingame), Adv. Proc. No. 09-228 (Bankr. W.D. Tenn. May 14, 2009), ECF No. 100-35 ("Montedonico Complaint").)  The Montedonico Complaint concerned the CD at issue in the CD claim.  (See, e.g., id. ¶ 9.)  The Complaint asked "[t]hat the [CD] be determined to be property of [MGB]."  (Id. at 4.)

On May 30, 2010, the parties in the overarching bankruptcy proceeding asked the Bankruptcy Court to approve a settlement. (Mot. to Approve Compromise and Settlement Pursuant to Fed. R. Bankr. 9019(a), In re Blasingame, Case No. 08-28289-L (Bankr. W.D. Tenn. May 13, 2010), ECF No. 100-37 ("Bankruptcy Settlement Motion").)  The Bankruptcy Settlement Motion specifically referred to the CD.  (Id. ¶¶ 7-8.)

The Bankruptcy Settlement Motion stated that, "[a]s a result of negotiations between the Trustee and the Debtors, the Debtors have agreed to pay the Trustee $95,000.00 for the estate's interest in the Property," with "Property" defined to include the CD.  (Id. ¶ 16; see also id. ¶¶ 1, 7.)  The Motion stated also that the trustee "believes that the proposed compromise and settlement is reasonable under all the circumstances."  (Id. ¶ 17.)  Those circumstances included that,

> [w]ith regard to the [CD], [MGB] claims that
> she was indebted to [BFRGST] for advances
> made to her and that the payments of her
> salary and annuity payments to [BFRGST] were
> for the purpose of repaying those advances.
> The settlement proposed herein will avoid
> the necessity of trying the complaint filed
> by the Trustee with the attendant exepense
> [*sic*] and risk of an adverse decision from
> the Court.

(Id. ¶ 17(A).)

On June 15, 2010, the Bankruptcy Court granted the Bankruptcy Settlement Motion. (Order Granting Mot. to Approve Compromise and Settlement Pursuant to Fed. R. Bankr. P. 9019(a), In re Blasingame, Case No. 08-28289-L (Bankr. W.D. Tenn. June 15, 2010), ECF No. 100-38 ("Bankruptcy Settlement Order").) The order stated that, "[u]pon payment by the Debtors to the Trustee of the sum of $95,000 pursuant to the terms of this order, the Trustee shall sell to the Debtors any interest of the estate in [certain] property . . . ." (Id. ¶ 1.) That property included the CD. (Id. ¶ 1(C).) The order further provided that, "[t]o pay the Settlement Amount of $95,000.00, the Debtors and [BFRGST] shall instruct Community South Bank to liquidate the [CD] and pay over the funds to [the trustee]." (Id. ¶ 2.)

On July 13, 2010, the Bankruptcy Court entered an order dismissing the Montedonico Complaint. (Consent Order Dismissing Compl., Montedonico v. Blasingame Family Residence Generation Skipping Trust (In re Blasingame), Adv. Proc. No. 09-228 (Bankr.

W.D. Tenn. July 13, 2010), ECF No. 100-36.)  The Court stated

that the trustee "desires to dismiss the [adversary proceeding]

by consent of the parties," and ordered the Montedonico

Complaint dismissed with prejudice.  (Id. at 1–2.)

More than a year after the Bankruptcy Settlement Order, the

Bankruptcy Court entered an order permitting the trustee to sell

various claims to Church JV.  (See Order Granting Mot. for Order

Authorizing Trustee to Sell Estate Claims and Causes of Action,

In re Blasingame, Case No. 08-28289-L (Bankr. W.D. Tenn. Oct.

18, 2011), ECF No. 159-4 ("Claim-Transfer Order").)  Under the

Claim-Transfer Order, Church JV would pay the trustee $100,000

in exchange for "the transfer, conveyance and assignment of the

claims and cause of action of the Trustee which have been

asserted in . . . Adversary Action No. 09-00482."  (Id. ¶ 2.)

That adversary proceeding was not the one commenced by the

Montedonico Complaint.  The claims Church JV purchased included

claims "to avoid and recover transfers by, between, to and among

the Defendants [including BFRGST], which should be set aside and

avoided under applicable non-bankruptcy law."  (Id. ¶ 4(B).)

If the trustee had settled the CD claim, Church JV could

not buy it through the Claim-Transfer Order.  The Court must

decide, therefore, the effect of the Bankruptcy Settlement Order

on the CD claim.

Because the Bankruptcy Settlement Order is a court order,
its proper interpretation is a question of law.  See, e.g.,
Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 572 (6th
Cir. 2008) (citing Brady v. McAllister (In re Brady), 101 F.3d
1165, 1168 (6th Cir. 1996)).

BFRGST's account of the Bankruptcy Settlement Order is
clear and plausible.  (Mem. ISO BFRGST Mot. 8.)  The trustee and
the Debtors settled the CD claim before the trustee sold claims
to Church JV.  The CD claim was not among the claims sold to
Church JV.

Church JV's argument to the contrary is unclear.  (See
Church JV Resp. to BFRGST Mot. ¶¶ 27–31.)  Church JV appears to
suggest that the Bankruptcy Settlement Order did not actually
settle the CD claim.  That is implausible.  Under the Bankruptcy
Settlement Motion and the Bankruptcy Settlement Order, Debtors
and BFRGST liquidated the CD at issue and paid the funds to the
trustee for the purpose of buying the trustee's interest in
certain property, including the CD.  Given the circumstances,
the Bankruptcy Settlement Order settled the CD claim.

A trustee may sell causes of action that belong to the
estate.  See, e.g., Cadle Co. v. Mims (In re Moore), 608 F.3d
253, 258 (5th Cir. 2010); In re Nicole Energy Servs., Inc., 385
B.R. 201, 229–30 (Bankr. S.D. Ohio 2008).  A trustee can sell
only assets that are the estate's property.  See, e.g., In re

Osterwalder, 407 B.R. 291, 294 (Bankr. N.D. Ohio 2008) (citing 11 U.S.C. § 363(b)(1)); Richardson v. Huntington Nat'l Bk. (In re CyberCo Holdings, Inc.), 382 B.R. 118, 143 (Bankr. W.D. Mich. 2008). The CD claim did not belong to the estate when the trustee sold his claims to Church JV; the CD claim had already been settled. Church JV did not buy the CD claim, and it lacks standing to assert it.

BFRGST's Motion as to the CD claim is GRANTED.

## 2. MGB-Deposits Claim

BFRGST and Church JV disagree about deposits of annuity and paycheck payments that MGB made into a BFRGST bank account between January 1, 2007, and July 31, 2008. (Am. Compl. ¶ 25(d).)[12] The Court will refer to this as the MGB-deposits claim.

BFRGST contends that the MGB-deposits claim is for $29,034.54. Although the MGB deposits were "at least $38,000," BFRGST asserts that "all but $29,034.54 of the [MGB deposits] were used by the [BFRGST] to purchase" the CD discussed above. (Mem. ISO BFRGST Mot. 8.) BFRGST relies here on statements in

---

[12] The Amended Complaint notes deposits "[f]rom January of 2007 through May 2008." (Am. Compl. ¶ 25(d).) The Declaration of Joyce Long submitted by BFRGST refers to deposits by MBG "from January 1, 2007 through July 31, 2008." (Declaration of Joyce Long ¶ 5, ECF No. 159-6 ("Long Decl.").) BFRGST's challenge to this claim does not depend on the relevant dates. (See generally BFRGST Mem. 8-9.) The Court will construe the Amended Complaint as alleging deposits from January 1, 2007, through July 31, 2008.

the Declaration of Joyce Long submitted to support the BFRGST Motion.  (Id. at 8-9; Long Decl. ¶ 5.)  BFRGST contends that, because the CD claim was resolved, the MGB-deposits claim concerns only the additional $29,034.54.

BFRGST asserts that "the record is clear that [the MGB deposits] were made in repayment of a debt owed by [MGB] to [BFRGST]."  (Mem. ISO BFRGST Mot. 8-9.)  The basis for that assertion is Long's declaration.  (See Long Decl. ¶¶ 4-5.) According to BFRGST, the MGB deposits were loan repayments for which MGB received reasonably equivalent value because "her indebtedness [to BFRGST was] reduced dollar for dollar."  (Mem. ISO BFRGST Mot. 9.)  BFRGST contends that the MGB deposits were not a fraudulent transfer.  (Id.)[13]

Church JV responds that "material issues of fact exist as to" the MGB deposits.  (Church JV Resp. to BFRGST Mot. ¶ 32.) Church JV also argues that Long's declaration is new and subject to various objections.  (Id. ¶¶ 32(a), 33.)

The Court construes Church JV's latter argument as a motion to strike the declarations.  That motion must be considered first because "a district court should dispose of motions that

_____

[13] Under Tenn. Code Ann. § 66-3-309, a transfer is not voidable under § 66-3-305(a)(1) "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."  Under § 66-3-304, "[v]alue is given for a transfer . . . if, in exchange for the transfer or obligation, . . . an antecedent debt is secured or satisfied . . . ."

affect the record on summary judgment before ruling on the parties' summary judgment motions." Brainard v. Am. Skandia Life Assur. Corp., 432 F.3d 655, 667 (6th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)).

Within the Long Declaration, the key statements about the MGB-deposit claim are in Paragraphs 3 through 5. They purport to explain the true amount and purpose of the MGB deposits. Under Rule 56(c)(4), "[a]n affidavit or declaration used to support . . . a [Rule 56] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Church JV objects to the Long Declaration on several grounds. Two are dispositive. Church JV argues that Long "refers and testifies to bank and accounting records and documents which are not attached and, therefore, her testimony is unsupported by the record and lacking in foundation." (Church JV Resp. to BFRGST ¶ 32(a).) Church JV also argues that Long's "testimony as to bank and accounting records is hearsay without demonstrated exception." (Id.)

The Court construes the first objection as one under Federal Rule of Evidence 1006. Under that rule, "[t]he proponent [of evidence] may use a summary . . . to prove the content of voluminous writings, recordings, or

photographs . . . .  The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place."  In her declaration, Long summarizes BFRGST records and draws conclusions based on them, so that Federal Rule of Evidence 1006 is applicable.

"The Sixth Circuit imposes five requirements for the admission of summary evidence: (1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation."  Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc., No. 10-13181, 2012 WL 5363553, at *4 (E.D. Mich. Oct. 30, 2012) (citing United States v. Moon, 513 F.3d 527, 545 (6th Cir. 2008)).  Here, the Long Declaration does not meet the Rule 1006 criteria.  In particular, the Court cannot tell from the materials provided whether Long's summary is "accurate and nonprejudicial."

It is also unclear whether the underlying documents would be admissible as evidence.  "Courts cannot consider inadmissible

58

hearsay in an affidavit when ruling on a summary judgment motion." <u>Giles v. Univ. of Toledo</u>, 241 F.R.D. 466, 471 (N.D. Ohio 2007) (citing <u>N. Am. Specialty Ins. Co. v. Myers</u>, 111 F.3d 1273, 1283 (6th Cir. 1997)). Perhaps the materials on which Long relies are records of regularly conducted activity. <u>Cf.</u> Fed. R. Evid. 803(6). BFRGST does not lay a foundation for that conclusion.

Because BFRGST has moved for summary judgment, BFRGST has the burden to establish the admissibility of its supporting evidence. Because it fails to do so for the key conclusions of the Long Declaration, the Court will not consider that declaration. Without the Long Declaration, BFRGST's Motion fails as to the MGB-deposit claim.[14]

BFRGST's Motion as to the MGB-deposit claim is DENIED.

### 3. Paragraph 25(a) Claim

BFRGST argues that the Court should dismiss Church JV's claim as to Paragraph 25(a) of the Amended Complaint. Paragraph 25(a) alleges that "MGB took the proceeds from the sale of some 'property left by [MGB's] mother,' and deposited it into

---

[14] BFRGST argues in its reply that, "[b]ecause Plaintiff has failed to offer any evidence to rebut the testimony that [MGB's deposits] were loan repayments . . . and that MGB did not intend to hinder or defraud any creditors by repaying her debts to the BRT, no genuine material fact exists as to that proof." (BFRGST Reply 3.) BFRGST first had the burden to show that there was no material dispute about the MGB-deposit claim. It has failed to do so.

[BFRGST].”  (Am. Compl. ¶ 25(a).)  BFRGST makes three arguments.
The argument that Church JV lacks standing to bring the
Paragraph 25(a) claim must be addressed first.

BFRGST argues that Church JV lacks standing to assert its
claim because the trustee himself did not raise it.  (Mem. ISO
BFRGST Mot. 10.)  That argument turns on the Claim-Transfer
Order, which provided that Church JV was acquiring “the claims
and cause [*sic*] of action of the Trustee which have been
asserted in . . . Adversary Action No. 09-00482,” “as noted more
fully . . . in paragraph 4.”  (Claim-Transfer Order ¶ 2.)
Paragraph 4 states that the trustee is transferring

> all claims and/or causes of action asserted
> by Trustee in the Adversary Action, except
> those relating to Debtors’ discharge . . .
> including but not limited to . . .
> (A) [c]laims that . . . [Defendants,
> including BFRGST] have been used for an
> improper purpose and are, in fact, the alter
> egos or reverse alter egos of the Debtors,
> are shams to thwart, deceive, hinder and
> delay their creditors and to conceal assets
> from the claims of their creditors and/or
> have been so used in their assets repeatedly
> co-mingled with the assets of each of them
> should be one of the same and made available
> to their creditors; [and (B)] [p]ursuant to
> 11 U.S.C. §544(d), to avoid and recover
> transfers by, between, to and among the
> Defendants, which should be set aside and
> avoided under applicable non-bankruptcy law.

(Id. ¶ 4.)

BFRGST argues that, because the Paragraph 25(a) allegation
does not appear in the complaint in Adversary Proceeding No. 09-

00482, any claim or cause of action based on Paragraph 25(a) was not "asserted by Trustee in the Adversary Action."  Thus, the Claim-Transfer Order did not transfer any related fraudulent-conveyance claim to Church JV.

BFRGST's argument is not persuasive.  First, certain allegations in the complaint do refer to the content of the Paragraph 25(a) allegation.  (See Compl. to Recover Property of the Bankruptcy Estate, For Declaratory and Injunctive Relief, to Object to and Avoid Discharge, and to Object to Claimed Exemptions ¶¶ 32–33, Montedonico v. Blasingame (In re Blasingame), Adv. Proc. No. 09-00482 (Bankr. W.D. Tenn. Sept. 29, 2009), ECF No. 159-3 ("Compl. in 09-00482").)  For example, Paragraph 32 of the Complaint in 09-00482 noted MGB's inheritance "from her mother's estate."  (Id. ¶ 32.)  Paragraph 33 sought "a complete accounting" regarding the inheritance, because "Debtors have attempted to transfer certain inherited assets beyond the reach of creditors into the Trusts [including BFRGST] without consideration."  (Id. ¶ 33.)

Second, BFRGST misinterprets the Claim-Transfer Order.[15] BFRGST contends that, if the Complaint in 09-00482 did not state particular facts underlying a specific claim, the Claim-Transfer Order did not transfer the claim to Church JV.  There is no

_____

[15] As noted above, the interpretation of a court order is a question of law.  Winget, 537 F.3d at 572 (citing Brady, 101 F.3d at 1168).

61

evidence, however, that the Claim-Transfer Order incorporated this restrictive view.

The structure of the Claim-Transfer Order is contrary to BFRGST's reading. Were BFRGST correct, Paragraph 4 of the Claim-Transfer Order would be unnecessary. The Paragraph 2 reference to Adversary Proceeding No. 09-00482 would be sufficient, and there would be no need to "note[] more fully" in Paragraph 4 what the trustee was transferring. Because of Paragraph 4 and the references to MGB's inheritance in the Complaint in 09-00482, the Claim-Transfer Order did transfer the Paragraph 25(a) claim from the trustee to Church JV. Church JV has standing to bring the claim.

BFRGST also contends that the Paragraph 25(a) claim lacks particularity and is time-barred. The particularity argument is dispositive.

BFRGST argues that Paragraph 25(a) fails to identify "the property transferred, the date of transfer or the value of the property." (BFRGST Mem. ISO Mot. 9.)[16] The question arises about whether the January 13, 2016 Order has disposed of this argument. Although the Second Motion to Dismiss could have

---

[16] It is not entirely clear whether BFRGST intends to make this particularity argument. Based on the headings in the memorandum in support of the BFRGST Motion, it is unclear whether Sections III.F and III.G of that memorandum are two arguments that are subparts of Section III.E, or whether Section III.E is a distinct argument. The Court will construe Section III.E as a separate argument.

presented the argument, it did not.  (See generally Second Mot.
to Dismiss 11–15.)  The January 13, 2016 Order did not fail to
consider an argument made in the Second Motion to Dismiss
briefing.

The particularity argument is that Church JV "fail[ed] to
state a claim upon which relief can be granted."  Fed. R. Civ.
P. 12(b)(6).  A motion raising that defense "must be made before
pleading if a responsive pleading is allowed."  Id.  BFRGST
filed its answer on January 27, 2016, well before BFRGST filed
its present motion.  (See Answer of EBB, MGB, BFBIT, BFRGST, and
Fiberzone to First Am. Original Compl., ECF No. 149.)
Considered as an argument for dismissal, BFRGST's particularity
argument is untimely.  See, e.g., Emerman v. Fin. Commodity
Investments, L.L.C., No. 1:13CV2546, 2015 WL 6742077, at *5 n.4
(N.D. Ohio Nov. 2, 2015).

Numerous courts in this Circuit confronted with postanswer
dismissal motions have construed them as motions for judgment on
the pleadings under Rule 12(c).  See, e.g., Daniel v. George,
No. 1:13-CV-00058, 2015 WL 3970787, at *1 (M.D. Tenn. June 29,
2015); Novak v. Prison Health Servs., Inc., No. 13-CV-11065,
2014 WL 988942, at *3 n.4 (E.D. Mich. Mar. 13, 2014).  The
standard for Rule 12(c) motions is essentially identical to that
for Rule 12(b)(6) motions.  See, e.g., Gavitt v. Born, No. 15-
2136, 2016 WL 4547258, at *10 (6th Cir. Sept. 1, 2016); JPMorgan

Chase Bank, N.A. v. Winget, 510 F.3d 577, 581–82 (6th Cir. 2007).

The Court may properly consider whether the Paragraph 25(a) allegations lack particularity.  They do.  Paragraph 25(a) simply states: "MGB took the proceeds from the sale of some 'property left by my mother,' and deposited it into the [BFRGST]."  Nothing here isolates the timing or amount of any specific transfer from MGB to BFRGST.  See, e.g., Hyundai Translead, Inc. ex rel. Estate of Trailer Source, Inc. v. Jackson Truck & Trailer Repair Inc., 419 B.R. 749, 759 (M.D. Tenn. 2009) (discussing cases).  Paragraph 25(a) is a generic assertion of a conveyance, with no detail.  That is insufficient.[17]  The BFRGST Motion as to the Paragraph 25(a) claim is GRANTED.[18]

---

[17] Church JV contends that "Paragraph [25](a) cannot be read in solo," but should be read "in the context of other facts set forth in the Amended Complaint."  (Mem. ISO Church JV Resp. to BFRGST Mot. ¶ 36.)  That may be true, but does not change the fact that the Court should address whether the allegations in Paragraph 25(a) themselves support a fraudulent-conveyance claim.  Church JV cites no case law to the contrary.  Church JV invites the Court to look through Church JV's responses to BFRGST's discovery, contending that those responses show "sufficient facts to support claims and causes of action against [BFRGST]" and "to demonstrate the existence of disputes as to material facts."  (Id. ¶ 37.)  That is not the Court's responsibility.  Cf. Dunkel, 927 F.2d at 956.

[18] Because the particularity argument is dispositive, the Court expresses no opinion on BFRGST's alternative argument that the Paragraph 25(a) claim is time-barred.

Church JV argues that any dismissals the Court grants should be without prejudice.  (Mem. ISO Church JV Resp. to BFRGST Mot. ¶¶ 49–50.)  Church JV also seeks leave to conduct additional discovery and to amend the Amended Complaint.  (Id. ¶¶ 47–48.)  For the same reasons the Court has denied similar Church JV requests, the Court denies these.  The dismissals are with prejudice, and at this late date, the Court will not permit added discovery or allow Church JV to amend the Amended Complaint.

The BFRGST Motion as to the CD claim and the Paragraph 25(a) claim is GRANTED.  The BFRGST Motion as to the MGB-deposits claim is DENIED.  Because a fraudulent-conveyance claim remains for trial as to BFRGST, the Court DENIES the BFRGST Motion to the extent it requests dismissal of the Amended Complaint's third, fourth, and fifth causes of action against BFRGST.

### F.    BFBIT Motion

BFBIT argues that only five Amended Complaint paragraphs pertain to it: Paragraphs 37, 40, 43, 47, and 48.  (Mem. in Supp. of Def. BFBIT's Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and, in the Alternative, for Summ. J. as to Counts II–V of the Compl. 5, ECF No. 160-2 ("Mem. ISO BFBIT Mot.").)  After the January 13, 2016 Order, BFBIT asserts that only Paragraphs 37, 40, and 43 address fraudulent-transfer

allegations against it.  (Id. at 6–7.)  BFBIT argues that it is entitled to judgment as a matter of law on any claims based on those paragraphs.  The gravamen of its argument is that Church JV lacks standing to bring such claims and that, even if it has standing, the claims are time-barred.  (Id. at 8–11.)

Church JV suggests that the January 13, 2016 Order has implicitly addressed BFBIT's arguments.  (Mem. in Supp. of Pl.'s Resp. to Def. BFBIT's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Mot. for Summ. J. as to Counts II, III, IV, and V of the Compl. ¶¶ 11–12, ECF No. 167-1 ("Mem. ISO Church JV Resp. to BFBIT Mot.").)  Church JV also asserts that the Court should treat the BFBIT Motion as one for summary judgment.  (Id. ¶¶ 14–16.)  Addressing BFBIT's standing argument, Church JV suggests that the argument confuses claims and causes of action, on the one hand, and facts underlying claims or causes of action, on the other.  (Id. ¶¶ 18–21.) Church JV argues that the relevant claims are not time-barred. (Id. ¶¶ 22–28.)

BFBIT's reply reiterates BFBIT's argument that Church JV lacks standing to bring claims based on Paragraphs 37, 40, and 43.  (BFBIT Reply 2–5.)  BFBIT then argues that the relevant claims are time-barred and that the doctrines of relation-back and equitable tolling are not available to Church JV.  (Id. at 5—8.)

Church JV does not challenge BFBIT's argument that,
following the January 13, 2016 Order, the only Amended Complaint
paragraphs alleging fraudulent transfers to BFBIT are Paragraphs
37, 40, and 43.  Those paragraphs allege the following:

> 37.  EBB and MGB allege that the assets of
> the [BFBIT] include, among other
> things, 100% of BFI (which may be owned
> individually by EBB and as to which
> Debtor EBB is President); 205 acres
> adjacent to the Debtors' residence, GF
> Corp. (as to which Debtor [MGB] is
> President); two rental properties; 1300
> acres of farm land, and various
> investment accounts.  EBB and MGB
> quitclaimed real property that MGB
> received through inheritance from her
> mother to the [BFBIT].
>
> . . .
>
> 40.  MGB deposited an undisclosed amount of
> money from an investment account at UBS
> in her "own name" into a bank account
> owned by [BFBIT].  MGB and EBB then
> benefited from her control and use of
> [BFBIT].  This is in addition to any
> money which may have been returned by
> MGB/EBB as part of a settlement with
> the chapter 7 trustee in their personal
> bankruptcy case.
>
> . . .
>
> 43.  . . . [O]n January 14, 2005, EBB and
> MBB quitclaimed property that they
> inherited from Evelyn Hipshire Gooch,
> to the [BFBIT].

Church JV's contentions require the Court to determine
whether the January 13, 2016 Order addressed the present
arguments.  The Second Motion to Dismiss argued that Church JV

lacked standing to bring a fraudulent-transfer claim based on the Paragraph 43 allegations.  (Second Mot. to Dismiss 21.)  The January 13, 2016 Order did not address that argument.  (See generally January 13, 2016 Order.)  The Second Motion to Dismiss did not raise the present standing argument as to Paragraphs 37 and 40.  (See generally Second Mot. to Dismiss.)  Because standing is at issue, the Court must consider the argument. See, e.g., Works ex rel. A.R.W. v. Comm'r of Soc. Sec., 886 F. Supp. 2d 690, 696 (S.D. Ohio 2012) (noting a district court's "obligation to raise standing issues *sua sponte*") (citing Adarand Constructors, Inc. v. Mineta, 534 U.S. 103, 109 (2001)).

BFBIT's standing argument fails for essentially the same reasons BFRGST's standing argument fails.  (See generally Section IV.E.3 above.)  First, the Complaint in 09-00482 does contain material about the allegations in Paragraphs 37, 40, and 43.  The allegations in Paragraphs 37 and 43 of the Amended Complaint speak to MGB's inheritance from her mother.  As noted above, Paragraph 32 of the Complaint in 09-00482 invokes MGB's inheritance "from her mother's estate," and Paragraph 33 of the Complaint in 09-00482 demands "a complete accounting" for MGB's inheritance, because "Debtors have attempted to transfer certain inherited assets beyond the reach of creditors into the Trusts [including BFBIT] without consideration."

The allegations in Paragraph 40 of the Amended Complaint speak to a "bank account owned by [BFBIT]." The Complaint in 09-00482 also has allegations about that account. Specifically, Paragraph 35 in the Complaint in 09-00482 asserts that, contrary to statements made in Debtors' bankruptcy filings, Debtors in fact had "not less than twenty-one (21) accounts . . . upon which Debtors have single signatory authority . . . ." One listed account is an account with an "alleged owner" of BFBIT at UBS Financial Services, Inc., for which "M. Blasingame" allegedly had signatory rights. Compl. in 09-00482 ¶ 35. The trustee then alleged that "the Debtors have treated the accounts as their own personal accounts by regularly and without business purpose drawing funds for their own use and transferring and commingling funds between unrelated entities as if each account was their own personal account without regard to the corporate existence or trust purpose." Id. ¶ 36.

Given the allegations in the Complaint in 09-00482, the facts underlying Paragraph 37, 40, and 43 of the Amended Complaint were sufficiently asserted in the Complaint in 09-00482. BFBIT's interpretation of the Claim-Transfer Order is, like BFRGST's, unduly restrictive. Church JV has standing to assert fraudulent-transfer claims based on the allegations of Paragraph 37, 40, and 43.

This analysis also disposes of BFBIT's statute-of-limitations argument. BFBIT argues that, "[b]ecause the transfers described in paragraphs 37, 40 and 43 of the First Amended Complaint were not asserted in the [Complaint in 09-00482], those claims were time barred by [11 U.S.C. § 546(a)]." (Mem. ISO BFBIT Mot. 10.) The key premise here is wrong: the transfers were sufficiently asserted in the Complaint in 09-00482. Claims based on those transfers are not time-barred.[19]

The BFBIT Motion is DENIED.

## V. CONCLUSION

The Motion for Status Conference is DENIED as moot.

The KBC/EBB Jr. Motion is GRANTED. All claims against KBC and EBB Jr. are dismissed. As discussed above (see note 6 and accompanying text), if Church JV wishes, it may file a short pleading amending Paragraph 7 of the Amended Complaint to allege that EBB Jr. is Debtors' son.

The Fiberzone Motion as to all fraudulent-transfer claims is GRANTED except for the credit-card claim discussed in Section IV.C.1 above. The Motion as to that fraudulent-transfer claim

---

[19] BFBIT notes the four-year statute of repose at section 66-3-310 of the Tennessee Code. (Mem. ISO BFBIT Mot. 10-11.) BFBIT asserts, however, that "[11 U.S.C. § 546(a)] is controlling," and Church JV takes no position on the issue. (Id. at 10; see generally Church JV Mem. ISO BFBIT Resp.) The Court need not pursue the argument.

and as to the third, fourth, and fifth causes of action in the Amended Complaint is DENIED.

The EBB/MGB Motion requesting dismissal of any fraudulent-conveyance claims against Debtors is GRANTED. The EBB/MGB Motion requesting that the Court remove Debtors from this action is DENIED.

The BFRGST Motion is GRANTED in part and DENIED in part. The Motion as to the CD claim and the Paragraph 25(a) claim is GRANTED. The Motion as to the MGB-deposits claim and as to the third, fourth, and fifth causes of action in the Amended Complaint is DENIED.

The BFBIT Motion is DENIED.

So ordered this 17th day of November, 2016.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE