IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CHURCH JOINT VENTURE, A LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:12-cv-02999 |
| EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME; EARL BENARD "BEN" BLASINGAME, JR.; BLASINGAME FAMILY BUSINESS INVESTMENT TRUST; BLASINGAME FAMILY RESIDENCE GENERATION SKIPPING TRUST; and FIBERZONE TECHNOLOGIES, INC.; | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Before the Court are the parties' pretrial memoranda and responses. On December 16, 2016, Plaintiff Church Joint Venture, a Limited Partnership ("Church JV") filed its Memorandum Addressing Issues Remaining for Trial. (ECF No. 198 ("Church JV Mem.").) On January 6, 2017, Defendants Earl Benard Blasingame ("EBB"); Margaret Gooch Blasingame ("MGB"); Earl Benard "Ben" Blasingame, Jr. ("EBB Jr."); Fiberzone Technologies, Inc. ("Fiberzone"); Blasingame Family Residence Generation Skipping Trust ("BFRGST"); and Blasingame Family Business Investment Trust ("BFBIT") -- collectively,

"Defendants"[1] -- filed their Memorandum in Response to Plaintiff's Memorandum Addressing Issues Remaining for Trial. (ECF No. 201 ("Defs.' Resp.").)

On December 16, 2016, Defendants filed their Memorandum Concerning Remaining Claims to be Tried. (ECF No. 199 ("Defs.' Mem.").) On January 6, 2017, Church JV filed its Response to Defendants' Memorandum Concerning Remaining Claims to be Tried. (ECF No. 200 ("Church JV Resp.").)

Also before the Court is the November 22, 2016 Motion and Memorandum of BFBIT and EBB Jr. to Strike [Certain Allegations] of Amendment to Paragraph 7 of Complaint. (ECF No. 191 ("Mot. to Strike").) Church JV did not file a response to the Motion to Strike, and the deadline for doing so has passed. L.R. 7.2(a)(2). The Church JV Memorandum and Church JV Response contain pertinent material that the Court has considered. (See Church JV Mem. ¶¶ 4-8 & n.3; Church JV Resp. 5-10.)

For the following reasons, the Motion to Strike is DENIED. Two issues remain for trial. The first is whether (and to what extent) MGB's deposits -- between January 1, 2007, and July 31, 2008 -- of annuity and paycheck payments into a BFRGST bank account are fraudulent transfers. The second is whether (and to what extent) Debtors' transfer to BFBIT of the real property

---

[1] References to "Debtors" are to Defendants EBB and MGB collectively.

listed in a quitclaim deed dated January 14, 2005, is a
fraudulent transfer. No claims remain for trial as to EBB Jr.
or Fiberzone. Both are dismissed from this action.

## I. BACKGROUND

Section I of the Court's Order dated November 17, 2016 --
the "November 2016 Order" -- recounts the history of this
matter. Church Joint Venture, a Ltd. P'ship v. Blasingame, No.
2:12-CV-02999, 2016 WL 6810873, at *2-5 (W.D. Tenn. Nov. 17,
2016). This Background section addresses only the November 2016
Order and the proceedings that have followed it.

The November 2016 Order addressed, inter alia, five
motions. First, it addressed the Motion to Dismiss [First]
Amended Complaint Pursuant to Federal Rule of Civil Procedure
Rule 12(b)(6) filed by EBB Jr. and Katherine Blasingame Church
("KBC") on June 29, 2016. (ECF No. 155 ("KBC/EBB Jr. Mot.").)
The Court granted the motion. (November 2016 Order at *10-11.)

The Court also granted Church JV leave to "amend the
Amended Complaint to state that EBB Jr. is Debtors' son." (Id.
at *12; see id. at *12 n.6.) The Amended Complaint contained
"several allegations that suggest transfers to Debtors' son."
(Id. at *10; see Am. Compl. ¶¶ 81(a), 84(a), 91.) The Court
concluded that an amendment stating that EBB Jr. is Debtors' son
would permit claims based on those allegations to proceed. (Id.
at *10.)

Second, the November 2016 Order addressed the Motion for Summary Judgment as to Counts II, III, IV, and V of the Complaint filed by Fiberzone on June 29, 2016. (ECF No. 156 ("Fiberzone Mot.").) The Court considered four Fiberzone-related fraudulent-transfer claims, one of which was that MGB performed a fraudulent transfer by incurring obligations to credit-card companies for charges made on her credit card for Fiberzone's benefit (the "Credit-Card Claim").[2] The Court granted the Fiberzone Motion on all claims but the Credit-Card Claim, concluding that the Credit-Card Claim "is the only Fiberzone-related fraudulent-transfer claim remaining for trial." (November 2016 Order at *16.)

Third, the November 2016 Order addressed Debtors' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the Alternative, Motion for Summary Judgment, filed on July 11, 2016. (ECF No. 158 ("Debtors' Mot."). The Court decided that "[t]he Amended Complaint lacks any allegations specifying transfers to either Debtor (as opposed to transfers from the Debtors)." (November 2016 Order at *17.)

---

[2] The other Fiberzone-related fraudulent-transfer claims addressed in the November 2016 Order were that (1) EBB provided consulting services to Fiberzone for no consideration; (2) Fiberzone wrote various checks to EBB without identifying the reasons for payments; and (3) payments from Blasingame Farms, Inc. ("BFI") to Fiberzone were linked to payments that EBB received from the U.S. Department of Agriculture. (November 2016 Order at *14–16.)

The Court granted Debtors' Motion that the Court dismiss any claims based on fraudulent transfers to Debtors. (Id.) The Court concluded that "[n]o claims of fraudulent conveyances to Debtors survive for trial." (Id. at *18.)

Debtors' Motion also asked that Debtors be dismissed because they are neither necessary nor permitted parties. (Debtors' Mot. 3.) The Court denied that part of Debtors' Motion, holding that Debtors are required parties under Rule 19(a)(1)(A) or, alternatively, permitted parties under Rule 20(a)(2)(B). (November 2016 Order at *17–18.)

Fourth, the November 2016 Order addressed BFRGST's July 11, 2016 Motion for Summary Judgment as to Counts II, III, IV, and V of the Complaint and for Partial Dismissal Pursuant to Rule 12(b)(1) as to Paragraph 24(a) of the Complaint. (ECF No. 159 ("BFRGST Mot.").) The Order analyzed three potential fraudulent-transfer claims against BFRGST. The first arose from a certificate of deposit (CD) purchased by MGB. The Court granted the BFRGST Motion on that claim. (November 2016 Order at *21.) The second claim arose from MGB's deposits of annuity and paycheck payments into a BFRGST bank account. The Court denied the BFRGST Motion on that claim. (Id. at *23.) The third claim was stated in Paragraph 25(a) of the Amended Complaint. Paragraph 25(a) alleged that MGB had collected proceeds from the sale of property left to her by her mother and

then transferred those proceeds to BFRGST. (Am. Compl. ¶ 25(a).) The Court granted the BFRGST Motion on the Paragraph 25(a) claim. (November 2016 Order at *25.)

Fifth, the November 2016 Order addressed BFBIT's July 11, 2016 Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and, in the Alternative, for Summary Judgment as to Counts II, III, IV, and V of the Complaint. (ECF No. 160 ("BFBIT Mot.").) The Court denied the BFBIT Motion. (November 2016 Order at *27.)

At the time of the November 2016 Order, this matter was set for trial on November 28, 2016. (Scheduling Order 1, ECF No. 154.) On November 18, 2016, the Court held a pretrial conference. (Minute Entry, ECF No. 187.) Counsel for the parties sought a continuance of the trial to review the November 2016 Order. (Id.) The Court denied that request. (Id.)

On November 21, 2016, Church JV filed its Partial Amendment to Original Complaint. (ECF No. 189 ("Church JV Partial Amend.").) The amended Paragraph 7 of the Amended Complaint reads, in relevant part, as follows:

> Defendant EARL BENARD "BEN" BLASINGAME, JR. ("Ben" or "Ben Jr.") is an adult resident and citizen of the State of Tennessee . . . . Ben Jr. is the son of EBB and MGB. . . . As further alleged below, EBB and MGB established a "clearing account" in the name of Ben Jr. and using his Social Security Number, into which they deposited hundreds of thousands of dollars between the time it was opened and the time EBB and MGB filed bankruptcy on August 15, 2008. Ben

Jr. did not use this account. The
ostensible purpose of the account was so
that Joyce Long could write checks for
various trusts controlled by EBB and MGB,
yet she wrote and signed checks for those
trusts on many occasions. Ms. Long,
[Debtors'] long time bookkeeper, used the
"clearing account," which was part of the
BIT (defined herein) to pay bills of and
loan money to EBB and MGB. The "clearing
account" was concealed from EBB and MGB's
creditors. Its use enabled EBB and MGB, who
had no personal or real property in their
name after December 1993, to maintain their
lifestyle while at the same time concealing,
hindering, delaying and defrauding their
creditors from gaining access to the funds
in the account.

(Id. at 1-2 (emphasis removed).)[3]

On November 22, 2016, EBB Jr. filed his Answer to Church
JV's Partial Amendment. (ECF No. 190.) EBB Jr. admitted being
Debtors' son, but denied the remaining substantive allegations
in Paragraph 7. (Id. at 1-2.) The same day, EBB Jr. and BFBIT
filed the Motion to Strike.

On November 23, 2016, the Court held a status conference.
(Minutes, ECF No. 192.) After discussion with counsel, the
Court continued the trial "to allow for clarification of

---

[3] In the Amended Complaint, Paragraph 7 read, in relevant part,
as follows:

Defendant EARL BENARD "BEN" BLASINGAME
("Ben") is an adult resident and citizen of
the State of Tennessee . . . .

(First Am. Original Compl. ¶ 7, ECF No. 81 ("Am. Compl.").)

claims." (Id.) The Court set a status conference on November 28, 2016, to reschedule the trial.

At the November 28 status conference, the Court set a new trial date: March 20, 2017. (Minutes, ECF No. 194.) The Court also ordered the parties to file memoranda addressing the remaining issues for trial by December 16, 2016, and to file responses by January 6, 2017. (Id.)

On December 16, 2016, Church JV filed the Church JV Memorandum and Defendants filed Defendants' Memorandum. On January 16, 2017, Church JV filed the Church JV Response and Defendants filed Defendants' Response.

## II. ANALYSIS

### A. Motion to Strike

The Motion to Strike asks the Court to "strike those portions of [Church JV's] amendment to paragraph 7 which go beyond Plaintiff's allegation that [EBB Jr.] is the son of [Debtors]," and to "prohibit [Church JV] from attempting to introduce evidence in support of such claims at trial." (Mot. to Strike 3-4.) Defendants cite no rule to support their Motion to Strike. (Church JV Mem. 7 n.3; see generally Mot. to Strike.) Rule 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or

scandalous matter."[4]  The Court construes the Motion to Strike to
be based on Rule 12(f).

Rule 12(f)'s language is permissive, not mandatory.  A
motion to strike serves the purpose of "'avoid[ing] the
expenditure of time and money that must arise from litigating
spurious issues by dispensing with' them early in the case."
Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.,
783 F.3d 1045, 1050 (6th Cir. 2015) (quoting Kennedy v. City of
Cleveland, 797 F.2d 297, 305 (6th Cir. 1986)).  Such a motion,
however, is "a drastic remedy to be resorted to only when
required for the purposes of justice" and when "the pleading to
be stricken has no possible relation to the controversy."
Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819,
822 (6th Cir. 1953); see also Parlak v. U.S. Immigration &
Customs Enf't, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir.
Apr. 27, 2006) (quoting Brown).  The Sixth Circuit has recently
stated that Rule 12(f) motions "are viewed with disfavor and are
not frequently granted."  Operating Eng'rs, 783 F.3d at 1050
(citing cases).  Generally, "'courts should not tamper with the
pleadings unless there is a strong reason for so doing.'"
Williams v. E.I. du Pont de Nemours & Co., Inc., No. 2:15-CV-
02111-STA-DKV, 2016 WL 7192173, at *2 (W.D. Tenn. Dec. 12, 2016)

---

[4] Unless otherwise noted, all citations to "Rule __" are to the
Federal Rules of Civil Procedure.

(quoting *City of New York v. Fedex Ground Package Sys., Inc.,* 314 F.R.D. 348, 354 (S.D.N.Y. 2016)).

The gravamen of Defendants' argument is that Church JV's amendment goes beyond what the Court contemplated in its November 2016 Order. (Mot. to Strike ¶¶ 1-2.) In addition to the allegation that EBB Jr. is Debtors' son, the new Paragraph 7 includes allegations about a clearing account that appear neither in the original Amended Complaint nor in Church JV's discovery responses. (*Id.* ¶¶ 2-6.) Defendants contend the amendment is "prejudicial to the Defendants" and "expands the claims asserted by [Church JV] . . . ." (*Id.* ¶ 7.)

Church JV has not filed a response to the Motion to Strike. The Church JV Memorandum, however, states that, "[t]o the extent necessary . . . ,[5] Church JV adopts [the Church JV Memorandum] as its response to the Motion to Strike." (Church JV Mem. ¶ 8 n.3.) Church JV argues that its Paragraph 7 amendment "satisfies the Court directive in [the November 2016 Order], tracks the allegations in the Amended Complaint, and complies

---

[5] Church JV suggests that the Motion to Strike may be inappropriate because "the time to file dispositive motions has passed." (Church JV Mem. ¶ 8 n.3.) Even if the Motion to Strike were a dispositive motion –– which the Court will assume without deciding –– the Court may consider it. Under Rule 12, a court may strike material from pleadings "on its own," without any motion from a party. Fed. R. Civ. P. 12(f)(1). It follows that a court can consider a motion to strike filed after a dispositive-motion deadline.

with the Court's comments at the [November 18] Pretrial Conference . . . ." (<u>Id.</u> ¶ 6.)

Striking material from Paragraph 7 is unnecessary. The purposes of justice do not require granting the Motion to Strike. The content added to Paragraph 7 arguably goes beyond what the November 2016 Order permitted, but the material relates to the controversy between the parties. More importantly, the new material does not prejudice Defendants. As discussed below, even assuming that the new material is properly part of the Amended Complaint, no claims based on the clearing account will proceed to trial. The Motion to Strike is DENIED.

**B.    Remaining Issues for Trial**

In the Memoranda and Responses, the parties raise numerous issues that remain for trial. Church JV asserts that ten issues remain:[6]

> 1.    "Whether and to what extent [EBB] fraudulently transferred property to Fiberzone?" (Church JV Resp. 3; <u>see also</u> Church JV Mem. 8.)
>
> 2.    "Whether and to what extent [MGB] used a credit card in the name of [Fiberzone] for her personal benefit, which charges were paid for through the 'clearing account' and were not disclosed or known to her creditors and were, therefore, fraudulent transfers?"

---

[6] The numbering is the Court's, not Church JV's, and is based on the Court's review of the Church JV Memorandum and the Church JV Response.

(Church JV Resp. 3; *see also* Church JV Mem. 8.)

3.    "Whether and to what extent [MGB's] transfer of annuity and employment checks into a bank account of the [BFRGST] (approximately $38,000) constituted a fraudulent transfer from [MGB] to the [BFRGST]?" (Church JV Resp. 4; <u>see also</u> Church JV Mem. 8.)

4.    "Whether and to what extent Debtors fraudulently transferred property to the [BFRGST] directly or indirectly through the vehicle and use of the 'clearing account'?" (Church JV Resp. 4; <u>cf.</u> Church JV Mem. 8 ("Whether and to what extent Debtors fraudulently transferred property to the . . . [BFRGST]?").)

5.    "Whether and to what extent Debtors fraudulently transferred property to the [BFBIT]?" (Church JV Resp. 10; <u>see also</u> Church JV Mem. 8.)

6.    "Whether and to what extent the transfer of certain real property by Debtors by Quitclaim Deed dated January 14, 2005, to the [BFBIT] constituted a fraudulent transfer from Debtors to the [BFBIT]?" (Church JV Resp. 10; <u>see also</u> Church JV Mem. 8.)

7.    "Whether and to what extent [Debtors'] transfer of personal property, including cash, to the [BFBIT], directly or indirectly by and through the use of the 'clearing account,' constituted a fraudulent transfer by Debtors as to their creditors (which includes, without limitation, checks totaling over $240,000.00 payable to [EBB] which he deposited in to [<u>sic</u>] the 'clearing account')? These transfers, as indicated in the Amended Complaint and summary judgment evidence amount to not less than $186,229.58

worth of checks drawn on the bank
account of the [BFBIT] and not less
than $60,028.00 worth of checks drawn
on the bank accounts of other trusts
and entities he controlled, which he
then deposited into the 'clearing
account.'  There may be other transfers
that will be revealed should the Court
order an accounting following trial."
(Church JV Resp. 10-11; <u>see also</u> Church
JV Mem. 8 & n.4.)

8.    "Whether and to what extent the
transfers from Debtors to the 'clearing
account' established by the Debtors and
which was opened in the name of their
son [EBB Jr.] and into which funds from
various trust and corporations [were]
commingled, constituted . . .
fraudulent transfers by Debtors to
third persons and entities?"  (Church
JV Resp. 11; <u>see also</u> Church JV Mem.
8.)

9.    "Whether and to what extent Debtors
used the 'clearing account' as a
vehicle to defraud creditors in that
the 'clearing account' contains money
transferred to it by Debtors, as well
as trusts and entities controlled by
Debtors, and from which Debtors would
accept transfers for [their] personal
financial benefit?"  (Church JV Resp.
11; <u>see also</u> Church JV Mem. 8-9.)

10.   "Whether and to what extent [EBB Jr.]
should be held liable to Church JV for
allowing his parents to use the
'clearing account,' which was
originally set up in his name and using
his SSN, to be used as a vehicle to
defraud Debtors' creditors?"  (Church
JV Resp. 11; <u>see also</u> Church JV Mem.
9.)

Defendants assert that five issues remain for trial:[7]

1.  Whether MGB "incurred obligations which are voidable under fraudulent transfer law by permitting [certain credit] cards to be used to incur charges for the benefit of Fiberzone"? (Defs.' Mem. 2; see also Defs.' Resp. 7 & n.3.)

2.  Whether MGB's "deposits of annuity and paycheck payments into a [BFRGST] bank account between January 1, 2007 and July 31, 2008" constitute fraudulent transfers? (Defs.' Mem. 2; see also Defs.' Resp. 6.)

3.  Whether MGB's "transfer[] [of] an undisclosed amount of money from her investment account at UBS 'in her own name' into a bank account owned by the [BFBIT]" constitutes a fraudulent transfer? (Defs.' Mem. 2; see also Defs.' Resp. 2, 6.)

4.  Whether Debtors' transfer to the BFBIT, on January 14, 2005, of "quitclaimed property that was inherited from Evelyn Hipshire Gooch" constituted a fraudulent transfer? (Defs.' Mem. 3; see also Defs.' Resp. 2, 6.)

5.  Whether Church JV "is entitled to any injunctive relief or accounting relief by reason of its remaining [fraudulent-transfer] claims against the other remaining Defendants"? (Defs.' Mem. 3.)

**1. Church JV Issue 1**

Church JV Issue 1 is "[w]hether and to what extent [EBB] fraudulently transferred property to Fiberzone?" (Church JV

---

[7] The numbering is the Court's, not Defendants', and is based on the Court's review of Defendants' Memorandum and Defendants' Response.

Resp. 3; see also Church JV Mem. 8.)  Defendants argue this is no longer a trial issue because (1) the only Amended Complaint allegation that EBB fraudulently transferred property to Fiberzone is that EBB provided Fiberzone uncompensated services, and (2) the November 2016 Order ruled that providing uncompensated services cannot be a fraudulent transfer.  (Defs.' Resp. 7.)

The uncompensated-services claim does not remain for trial. (November 2016 Order at *14–15.)  To the extent Church JV Issue 1 refers to some other, unspecified EBB-to-Fiberzone transfer, no such claim will proceed to trial.  The parties' Memoranda and Responses were to identify specific fraudulent-transfer claims that remain for trial.  Church JV Issue 1 states no precise claim.[8]  Church JV Issue 1 does not remain for trial.

### 2.  Church JV Issue 2 and Defendants' Issue 1

Church JV asserts than a remaining trial issue is "[w]hether and to what extent [MGB] used a credit card in the name of [Fiberzone] for her personal benefit, which charges were paid for through the 'clearing account' and were not disclosed

---

[8] The Church JV Response suggests that the only Fiberzone-related claim addressed in the November 2016 Order was the Credit-Card Claim.  As discussed in Section I above, that misreads the November 2016 Order and the Fiberzone-related briefing preceding that order.  (See, e.g., November 2016 Order at *12–16; Mem. ISO Fiberzone Mot. 4–10, ECF No. 156-1.)  The briefing and the November 2016 Order dealt with all of Church JV's asserted claims against Fiberzone.

or known to her creditors and were, therefore, fraudulent transfers?" (Church JV Resp. 3; <u>see also</u> Church JV Mem. 8.) The relevant clearing account -- mentioned in numerous other Church JV issue statements -- is a BancorpSouth account with the number xxxx2680 (the "Clearing Account"). (<u>See</u> Church JV Partial Amend. 1-2; Am. Compl. ¶ 81(a).)[9]

Church JV Issue 2 corresponds to Defendants' Issue 1 -- i.e., whether MGB "incurred obligations which are voidable under fraudulent transfer law by permitting [certain credit] cards to be used to incur charges for the benefit of Fiberzone"? (Defs.' Mem. 2; <u>see also</u> Defs.' Resp. 7.) It also corresponds to the Credit-Card Claim discussed above. (<u>See</u> Section I <u>supra</u>.) The parties agree that a claim remains for trial on certain credit-card payments related to Fiberzone. They disagree about the parameters of that claim.

Defendants argue that Church JV has changed its theory of the Credit-Card Claim, and that its new theory is inconsistent with the allegations in the Amended Complaint:

> In its Memorandum, Plaintiff describes the issue to be tried as whether MGB's use of the credit card in the name of [Fiberzone] for her personal benefit which charges were paid for through the clearing account were fraudulent transfers. This characterization is contrary to the allegations of the

---

[9] Neither the Church JV Memorandum nor the Church JV Response mentions any other potential clearing account. (<u>See generally</u> Church JV Mem.; Church JV Resp.)

> Amended Complaint which alleges that MGB
> obligated herself alone for repayment of
> charges that may have been made or incurred
> by [Fiberzone] on several credit cards. To
> the extent Plaintiff is intentionally
> changing its theory to contend that MGB used
> a credit card in the name of [Fiberzone],
> rather than vice versa, such allegation
> constitutes a new claim which is not pled in
> the [Amended] Complaint and the Court should
> not permit such claim to go to trial.

(Defs.' Resp. 7 n.3.)

Defendants correctly construe the Credit-Card Claim as pled
in the Amended Complaint. Paragraph 76 of the Amended Complaint
alleges: "Prior to August 2008 and continuing until at least
February 2009 and thereafter, MGB obligated herself alone for
repayment of any charges that may have been made or incurred by
[Fiberzone] on several credit cards . . . ." (Am. Compl. ¶ 76.)
There is no reference to the Clearing Account. (Id.) That is
consistent with Defendants' construction of the claim, not with
Church JV's.

The Fiberzone-related summary-judgment briefing also shows
that Defendants' construction of the claim is consistent with
the Amended Complaint. In the statement of material facts
submitted with the Fiberzone Motion, Fiberzone said that charges
for Fiberzone's benefit were made on MGB's credit card.
(Fiberzone's Statement of Undisputed Facts in Supp. of Mot. for
Summ. J. as to Counts II Through V of the Compl. ¶¶ 7-10 (ECF
No. 157).) Church JV did not dispute that statement. (See

generally Mem. in Supp. of Pl.'s Resp. to Fiberzone's Mot. for Summ. J. as to Counts II, III, IV, and V of the Compl., ECF No. 164.) The first time Church JV has suggested that MGB used a Fiberzone credit card is in the Church JV Memorandum and Response.

The November 2016 Order did not permit Church JV to amend its pleadings to add allegations that did not appear in the Amended Complaint. (November 2016 Order at *11–12.) The Court's reasons included the late stage of the proceedings and the absence of justification for the failure to amend earlier. For the same reasons, Church JV cannot try its new version of the Credit-Card Claim. Church JV Issue 2 does not remain for trial.

The question remains whether Defendants' construction of the Credit-Card Claim -- Defendants' Issue 1 -- remains for trial. It does not. The parties' versions of the Credit-Card Claim differ significantly. Church JV adopted its new version rather than Defendants' version (which is alleged in the Amended Complaint). In their Memorandum, Defendants state that "[Church JV's] counsel stated to the Court that [Church JV] does not intend to pursue such claim against Fiberzone" -- "such claim" referring to Defendants' construction of the Credit-Card Claim. (Defs.' Mem. 2.) Church JV argues that it intends to pursue the Credit-Card Claim, but asserts only its own construction of that

claim. (Church JV Resp. 1–3.) Church JV does not suggest that, in the alternative, it wishes to proceed to trial on Defendants' construction of the claim. (See generally id.) Given that history, Defendants' Issue 1 does not remain for trial.

The only Fiberzone-related fraudulent transfers potentially remaining for trial were Church JV Issue 1, Church JV Issue 2, and Defendants' Issue 1. None of those remains for trial. The Amended Complaint requests injunctive relief, accountings, and attorneys' fees. Those requests depend on the success of fraudulent-conveyance claims. No claims remain against Fiberzone. Fiberzone is dismissed from the action.

### 3. Church JV Issue 3 and Defendants' Issue 2

Church JV asserts that an issue remaining for trial is "[w]hether and to what extent [MGB's] transfer of annuity and employment checks into a bank account of the [BFRGST] (approximately $38,000) constituted a fraudulent transfer from [MGB] to the [BFRGST]?" (Church JV Resp. 4; see also Church JV Mem. 8.) The subject matter of this issue statement is the same as that in Defendants' Issue 2 -- i.e., whether MGB's "deposits of annuity and paycheck payments into a [BFRGST] bank account between January 1, 2007 and July 31, 2008" were fraudulent transfers. (Defs.' Mem. 2; see also Defs.' Resp. 6.)

The parties agree this claim remains for trial. The parties' statements of the claim differ in two ways. First,

Defendants suggest a date range including payments made between January 1, 2007, and July 31, 2008. Church JV provides no date range. Defendants' range is appropriate. The November 2016 Order explained:

> The Amended Complaint notes deposits "[f]rom January of 2007 through May 2008." The Declaration of Joyce Long submitted by BFRGST refers to deposits by MBG "from January 1, 2007 through July 31, 2008." BFRGST's challenge to this claim does not depend on the relevant dates. The Court will construe the Amended Complaint as alleging deposits from January 1, 2007, through July 31, 2008.

(November 2016 Order at *11 n.12 (citations omitted).) Defendants have construed the date range to extend to July 31, 2008. Church JV cannot object: the range alleged in the Amended Complaint is shorter.

Second, Church JV's issue statement asserts that the amount of the transfers is approximately $38,000. The Court is unaware of any stipulation as to amount. The amount must be determined through proof presented at trial.[10]

_____

[10] As discussed in the November 2016 Order, the parties dispute the extent to which MGB's deposits into the BFRGST account were used to purchase a certificate of deposit (CD). (November 2016 Order at *21.) The dispute matters because the November 2016 Order determined that, because the trustee in Debtors' bankruptcy settled the claim that the CD purchase was a fraudulent transfer, Church JV lacked standing to pursue that claim. (Id. at *19–21.) To the extent the MGB deposits into the BFRGST account were used to buy the CD, Church JV has no claim on them.

The first trial issue is whether and to what extent MGB's deposits of annuity and paycheck payments into a BFRGST bank account -- between January 1, 2007 and July 31, 2008 -- constitute fraudulent transfers.

### 4. Church JV Issue 4

Church JV asserts that an issue remaining for trial is "[w]hether and to what extent Debtors fraudulently transferred property to the [BFRGST] directly or indirectly through the vehicle and use of the 'clearing account'?" (Church JV Resp. 4.[11])

This issue will not proceed to trial. As noted above, the parties' briefing was designed to narrow the trial issues, and the parties were to indicate specific fraudulent-transfer claims that remained for trial. Church JV Issue 4 states no precise claim. Church JV points to no specific allegations in the Amended Complaint identifying transfers from the Clearing Account to BFRGST.

### 5. Church JV Issue 5

Church JV asserts that an issue remaining for trial is "[w]hether and to what extent Debtors fraudulently transferred

---

[11] Church JV changed its wording of this issue between the filing of the Church JV Memorandum and the filing of the Church JV Response. The Church JV Memorandum's issue statement did not mention the Clearing Account. (See Church JV Mem. 8 ("Whether and to what extent Debtors fraudulently transferred property to the . . . [BFRGST]?").)

property to the [BFBIT]?" (Church JV Resp. 10; <u>see also</u> Church JV Mem. 8.) This broadly worded issue will not proceed to trial. Church JV Issue 5 fails to identify any specific fraudulent-transfer claims remaining for trial.

### 6. Church JV Issue 6 and Defendants' Issue 4

Church JV asserts that a remaining trial issue is "[w]hether and to what extent the transfer of certain real property by Debtors by Quitclaim Deed dated January 14, 2005, to the [BFBIT] constituted a fraudulent transfer from Debtors to the [BFBIT]." (Church JV Resp. 10 (emphasis removed); <u>see also</u> Church JV Mem. 8.) The subject matter here is similar to Defendants' Issue 4, which asserts that a remaining trial issue is whether Debtors' transfer to BFBIT, on January 14, 2005, of "quitclaimed property that was inherited from Evelyn Hipshire Gooch" constituted a fraudulent transfer. (Defs.' Mem. 3; <u>see also</u> Defs.' Resp. 2, 6.)

The only significant difference between the issue statements is their descriptions of the transferred property. Neither party notes a dispute about what property was transferred. The Court assumes (without deciding) that the

clearer definition of the transferred property is provided by the quitclaim deed.[12]

The second issue for trial is thus whether and to what extent Debtors' transfer to BFBIT of the real property listed in the quitclaim deed dated January 14, 2005, is a fraudulent transfer.

### 7. Church JV Issue 7

Church JV asserts that an issue remaining for trial is "[w]hether and to what extent [Debtors'] transfer of personal property, including cash, to the [BFBIT], directly or indirectly by and through the use of the [Clearing Account,] constituted a fraudulent transfer by Debtors as to their creditors (which includes, without limitation, checks totaling over $240,000.00 payable to [EBB] which he deposited in to the [Clearing Account])?" (Church JV Resp. 10; see also Church JV Mem. 9.) Church JV asserts that "[t]hese transfers, as indicated in the Amended Complaint and summary judgment evidence[,] amount to not less than $186,229.58 worth of checks drawn on the bank account of the [BFBIT] and not less than $60,028.00 worth of checks drawn on the bank accounts of other trusts and entities he controlled, which he then deposited into the 'clearing account.'" (Church JV Resp. 10; see also Church JV Mem. 8 n.4.)

---

[12] The identity of the real property, or any dispute about the identity of that property, should be addressed in the joint proposed pretrial order.

Church JV asserts that "[t]here may be other transfers that will be revealed should the Court order an accounting following trial." (Church JV Resp. 10-11; see also Church JV Mem. 8 n.4.)

Defendants argue that this is an "attempt[] to expand [Church JV's] claims against [BFBIT]." (Defs.' Resp. 3.) They contend that these allegations do not appear in the Amended Complaint and are inconsistent with allegations that do appear in the Amended Complaint. (Id.) Defendants also argue that to the extent Church JV asserts transfers of funds from outside entities to Debtors –– as opposed to transfers from Debtors to other entities –– the transfers cannot be fraudulent. (Id. at 4.)

Church JV Issue 7 is not an issue for trial. The issue statement is vague and unhelpful. It refers to transfers of "personal property, including cash," but provides no specifics. It refers to transfers done "directly or indirectly . . . through the use of the [Clearing Account]," but provides no details about the method of transfer. The "without limitation" proviso suggests numerous transactions –– other than the transfer of checks payable to EBB –– but provides no detail. The issue statement refers to transfers that might be found in a posttrial accounting, but the purpose of the parties' memoranda is to determine the issues for trial itself. Church JV Issue 7 would confuse the jury.

More specific is Church JV's claim that Debtors transferred to BFBIT "checks totaling over $240,000.00 payable to [EBB] which he deposited in to the [Clearing Account].'" The Court cannot find these allegations anywhere in the Amended Complaint, even including the amended Paragraph 7. Church JV seems to suggest that "summary judgment evidence" supports its claims, but Church JV's summary-judgment evidence (even if it were what Church JV asserts) is no substitute for allegations in the operative complaint. Letting Church JV bring previously unpled claims now would amount to permitting amendment, which would be inappropriate at this juncture. Church JV Issue 7 will not proceed to trial.

### 8. Church JV Issues 8–10

Church JV's remaining potential trial issues overlap. Church JV Issue 8 is "[w]hether and to what extent the transfers from Debtors to the [Clearing Account] established by the Debtors and which was opened in the name of their son [EBB Jr.] and into which funds from various trust[s] and corporations [were] commingled, constituted fraudulent transfers by Debtors to third persons and entities?" (Church JV Resp. 11; see also Church JV Mem. 8.) Church JV Issue 9 is "[w]hether and to what extent Debtors used the [Clearing Account] as a vehicle to defraud creditors in that the [Clearing Account] contains money transferred to it by Debtors, as well as trusts and entities

controlled by Debtors, and from which Debtors would accept transfers for [their] personal financial benefit?" (Church JV Resp. 11; see also Church JV Mem. 8–9.) Church JV Issue 10 is "[w]hether and to what extent [EBB Jr.] should be held liable to Church JV for his allowing his parents to use the [Clearing Account] . . . as a vehicle to defraud Debtors' creditors?" (Church JV Resp. 11; see also Church JV Mem. 9.)

None of these issue statements isolates specific transfers. Church JV apparently contemplates that the upcoming trial will include a broad inquiry into the Clearing Account, as opposed to a review of specific transfers. That is not what the Court contemplated.

Defendants raise as a threshold issue whether Church JV has pled any fraudulent-transfer claims concerning the Clearing Account with particularity?[13] (Defs.' Mem. 3–8.) Defendants note the statement in the November 2016 Order that under Rule 9(b), parties alleging fraudulent-conveyance claims under Tennessee law must plead them with particularity. (Id. at 4 (citing November 2016 Order).) Defendants suggest that, even given the allegation that EBB Jr. is Debtors' son, the Amended

---

[13] The argument in Defendants' Memorandum focuses on whether Church JV has pled any claims against EBB Jr. with sufficient particularity. (Defs.' Mem. 3–8.) The gravamen of the Amended Complaint's allegations against EBB Jr. concern the Clearing Account. (See generally Am. Compl.) Defendants' particularity argument addresses the Clearing Account allegations in the Amended Complaint.

Complaint's claims about the Clearing Account are insufficiently particular. (Id. at 5-6.) They also argue that, because the Court has dismissed fraudulent-conveyance claims against other entities due to lack of particularity, consistency demands dismissal of claims about the Clearing Account. (Id. at 6-9.)

Church JV's response is unclear. It appears to suggest that the Court has already ruled in its favor on this issue. Church JV refers to the statement in the November 2016 Order that amending Paragraph 7 to include the allegation that EBB Jr. is Debtors' son "'would not be futile because allegations in the Amended Complaint about Debtors' son are sufficient to state a claim.'" (Church JV Resp. 8 (quoting November 2016 Order) (emphasis removed).)

The thrust of Defendants' argument is that the Court erred in its November 2016 Order. EBB Jr. raised the particularity issue in the KBC/EBB Jr. Motion to Dismiss. (See Mem. in Supp. of KBC/EBB Jr. Mot to Dismiss 7-8, ECF No. 155-1.) As Church JV notes, the Court found that argument unpersuasive. The Court thus construes Defendants' particularity argument as a motion that the Court reconsider its particularity finding as to the Clearing Account in the November 2016 Order.

A district court has the inherent power to reconsider or modify an interlocutory order before entry of a final judgment. See In re Metro. Gov't of Nashville & Davidson Cty., Tenn., 606

F.3d 855, 861 (6th Cir. 2010) (citing Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 118 F. App'x 942, 945–46 (6th Cir. 2004)); see also Fed. R. Civ. P. 54(b) ("[A]ny [interlocutory] order or decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "'[C]ourts will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) (second alteration in original) (quoting Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004)); see also L.R. 7.3 (stating standards for motions to revise interlocutory orders).

The Court understands Defendants to argue that the November 2016 Order failed to consider a dispositive legal argument –– namely, that the Clearing Account allegations in the Amended Complaint were not sufficiently particular to state a fraudulent-conveyance claim.[14] The Court agrees.

---

[14] Defendants also suggest that, even if the Court considers newly amended Paragraph 7, the Clearing Account allegations are insufficiently particular. (Defs.' Mem. 7–8.) This argument does not concern reconsideration, as amended Paragraph 7 did not exist at the time of the November 2016 Order. The Court will

Plaintiffs must plead fraudulent-conveyance claims with particularity. See, e.g., Phillips v. Nationstar Mortg., LLC, No. 3:13-CV-01414, 2016 WL 2866164, at *8–9 (M.D. Tenn. May 17, 2016); Heartland Payment Sys., Inc. v. Hickory Mist Luxury Cabin Rentals, LLC, No. 3:11-CV-350, 2011 WL 6122371, at *4–6 (E.D. Tenn. Dec. 8, 2011); Cricket Commc'ns, Inc. v. Eleiwa & Sons, Inc., No. 2:08-CV-02541-P, 2009 WL 3784596, at *2–3 (W.D. Tenn. Nov. 10, 2009). District courts require plaintiffs to allege "particularized facts with respect to the who, the what, the when, the where, and the how regarding the alleged fraudulent conduct." Phillips, 2016 WL 2866164, at *9; see also, e.g., Heartland Payment Sys., 2011 WL 6122371, at *5. This requires allegations of "the time, place, and amount of the conveyance . . . ." Eastwood v. United States, No. 2:06-CV-164, 2007 WL 2815560, at *3–4 (E.D. Tenn. Sept. 25, 2007); see also Phillips, 2016 WL 2866164, at *9 (dismissing fraudulent-conveyance claim where "[t]here is no allegation regarding the time or place in which the fraudulent presentations or transfers were made"); Heartland Payment Sys., 2011 WL 6122371, at *5 (same).

---

nevertheless consider the point about amended Paragraph 7 here because it presents the same particularity issue.

The relevant Clearing Account allegations in the Amended
Complaint appear in amended Paragraph 7 and in Paragraphs 81(a),
84(a), and 91. Those paragraphs allege the following:

- "[EBB Jr.] is an adult resident and
  citizen of the State of
  Tennessee . . . . [EBB Jr.] is the son
  of EBB and MGB. . . . As further
  alleged below, EBB and MGB established
  a 'clearing account' in the name of
  [EBB Jr.] and using his Social Security
  Number, into which they deposited
  hundreds of thousands of dollars
  between the time it was opened and the
  time EBB and MGB filed bankruptcy on
  August 15, 2008. [EBB Jr.] did not use
  this account. The ostensible purpose
  of the account was so that Joyce Long
  could write checks for various trusts
  controlled by EBB and MGB, yet she
  wrote and signed checks for those
  trusts on many occasions. Ms. Long,
  [Debtors'] long time bookkeeper, used
  the 'clearing account,' which was part
  of the [BFBIT] to pay bills of and loan
  money to EBB and MGB. The 'clearing
  account' was concealed from EBB and
  MGB's creditors. Its use enabled EBB
  and MGB, who had no personal or real
  property in their name after December
  1993, to maintain their lifestyle while
  at the same time concealing, hindering,
  delaying and defrauding their creditors
  from gaining access to the funds in the
  account." (Church JV Partial
  Amend. 1-2.)

- "In their Schedule J filed in [Debtors'
  bankruptcy], Debtors report total
  monthly income from employment of
  $888. The Debtors deny having other
  income from any other source.
  However, discovery has revealed that
  Debtors have received and personally
  spent and continue to spend over

$24,850 per month (equating to over $300,000 per year) for personal living expenses. For example and without limitation during the year prior to filing . . . [a] monthly average of $5,877 was deposited into [MGB's] household account . . . and spent for personal living expenses from various sources including transfers from all the Trusts and Corporations and from a commingled 'clearing account' (BancorpSouth account #[xxxx2680]) into which hundreds of thousands of dollars from multiple sources are deposited each year. This clearing account is concealed from creditors in the son's name, [EBB Jr.], although the son appears never to have written or signed a check and over which the Debtors exert full control and exercise single signatory authority." (Am. Compl. ¶ 81(a) (citation omitted).)

- "The Debtors now admit to having created a 'clearing account' (BancorpSouth account #[xxxx2680]), established in the name of their son, into which they regularly commingle funds from every source –– individual funds, Trust funds and Corporate funds. Initially, the Debtors asserted that they established this 'clearing account' to permit their bookkeeper, Joyce Long, to write checks because she supposedly could not write checks on the Trust accounts. Subsequently, the Debtors now admit that their bookkeeper was, in fact, signatory on all the Trust accounts and continued to write checks on all the Trust accounts, before and after this 'clearing account' was established. Thus, this BancorpSouth account operated as a depository into which individual funds, Trust funds and Corporate income were regularly 'commingled,' safe from creditors under their son's name, and

then disbursed to or for the benefit of the Debtors. Plaintiff assert[s] that all funds deposited into this 'commingling account,' accessible by the single signature of either of the Debtors, became Debtors' property as a matter of law and remained such thereafter. The Debtors exercised their single signatory authority on this 'commingling account' at BancorpSouth, and during the twelve (12) month period prior to their filing, deposited $270,210 into the account and withdrew $279,879 from the account. The deposits came from various sources including the three (3) Trusts and five (5) Corporations with significant amounts coming from unidentified 'cash deposits.' The Debtors have yet failed to produce copies of the deposits, copies of items deposited or the check registry. A significant number of checks (some $189,000) were written in 'even amounts' back and forth between the Trusts, the Corporations and to the Debtors and/or for their benefit." (Id. ¶ 84(a).)

- "As further evidence of Debtors' conscious scheme to utilize the Trusts and Corporations to defraud creditors is the account at BancorpSouth ([#xxxx2680]) —— the so-called 'Clearing Account' —— which was opened in the name of Debtors' son in order that its contents be safe from levy. Funds belonging to each of the Trusts, each of the Corporations and from one or more of the ten (10) separate bank accounts in Debtors' own names were and still are deposited, transferred back and forth as needed into the Clearing Account. . . . [W]hen one of the entities needs money, funds flow into and out of the Clearing Account and in many instances simply directly from/to the individuals, Trusts and

Corporations themselves.  Collectively, for years the Trusts and Corporations have been consciously and intentionally ignor[ing] corporate and trust formalities, choosing instead to utilize them for the single purpose of thwarting and defrauding creditors." (Id. ¶ 91.)

These paragraphs undoubtedly assert extensive and repeated improper conduct related to the Clearing Account.  The key question is whether these allegations state any fraudulent-transfer claims with particularity.  They do not.  There is no specific conveyance related to the Clearing Account for which these paragraphs provide the time and amount of the transfer.

The only allegations about the timing of Debtors' transfers to the Clearing Account are in amended Paragraph 7 and Paragraph 84(a).  Amended Paragraph 7 alleges that Debtors made various deposits into the Clearing Account "between the time it was opened and the time EBB and MGB filed bankruptcy on August 15, 2008."  (Church JV Partial Amend. 1.)  Paragraph 84(a) alleges various deposits into the Clearing Account "during the twelve (12) month period prior to [Debtors' bankruptcy] filing."  (Am. Compl. ¶ 84(a).)  There is no Clearing Account transaction for which Church JV specifies a particular date.

The only allegations about the amounts of Debtors' transfers to the Clearing Account are in amended Paragraph 7 and Paragraphs 81(a) and 84.  Paragraph 7 alleges that Debtors

transferred "hundreds of thousands of dollars" into the Clearing Account. (Church JV Partial Amend. 1.) Paragraph 81(a) alleges that "hundreds of thousands of dollars" are deposited into the Clearing Account "each year," although this refers to transfers from "multiple sources" and does not isolate transfers from Debtors. (Am. Compl. ¶ 81(a).) Paragraph 84(a) alleges that between August 15, 2007, and August 15, 2008, Debtors deposited $270,210 into the Clearing Account. (Id. ¶ 84(a).) There is no Clearing Account transaction for which Church JV provides a specific amount.

On this record, the Court finds that the Amended Complaint's Clearing Account allegations -- even following Church JV's amendment of Paragraph 7 -- are insufficiently particular to state any fraudulent-conveyance claims. Defendants' motion for reconsideration is GRANTED. No remaining issue for trial remains about the Clearing Account. Church JV Issues 8 and 9 do not remain for trial.

Because the only Amended Complaint claims against EBB Jr. concern the Clearing Account, the fraudulent-conveyance claims as to EBB Jr. are dismissed. The Amended Complaint's requests for injunctive relief, accountings, and attorneys' fees depend on the success of fraudulent-conveyance claims. None of those requests can succeed against EBB Jr. The Amended Complaint is dismissed as to EBB Jr. There is no issue remaining for trial

as to EBB Jr.'s liability to Church JV. Church JV Issue 10 no longer remains for trial.

### 9. Defendants' Issue 3

Defendants state that one potential issue remaining for trial is whether MGB's "transfer[] [of] an undisclosed amount of money from her investment account at UBS 'in her own name' into a bank account owned by the [BFBIT]" constitutes a fraudulent transfer. (Defs.' Mem. 2; <u>see also</u> Defs.' Resp. 2, 6.) Defendants state that, as to this claim, "[Church JV's] counsel advised the court that [Church JV] was not pursuing such claim . . . ." (Defs.' Mem. 3; <u>see also</u> Defs.' Resp. 6.) Church JV does not list this claim as remaining for trial in its Memorandum or its Response, and it does not challenge Defendants' statement that Church JV advised that it would not pursue this claim. (<u>See generally</u> Church JV Mem.; Church JV Resp.) This issue no longer remains for trial.

### 10. Defendants' Issue 5

Defendants state that an issue remaining for trial is whether Church JV "is entitled to any injunctive relief or accounting relief by reason of its remaining [fraudulent-transfer] claims against the other remaining Defendants." (Defs.' Mem. 3.) That is not a trial issue. It is a remedies issue the Court will address after the factfinder decides whether any fraudulent transfers occurred. At the status

conference on November 18, 2016, the parties agreed that the remedies sought in Counts III and IV of the Amended Complaint were not issues for the jury. (Hr'g Tr. 13, ECF No. 197.) There is no reason to alter that conclusion.

**III. CONCLUSION**

For the reasons discussed above, the Motion to Strike is DENIED. The upcoming trial will concern two issues. First, it will address whether and to what extent MGB's deposits of annuity and paycheck payments into a BFRGST bank account -- between January 1, 2007, and July 31, 2008 -- constitute fraudulent transfers. Second, it will address whether and to what extent Debtors' transfer to BFBIT of the real property listed in the quitclaim deed dated January 14, 2005, is a fraudulent transfer.

So ordered this 9th day of March, 2017.


/s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE