IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CHURCH JOINT VENTURE, A LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:12-cv-02999 ) |
| EARL BENARD BLASINGAME; MARGARET GOOCH BLASINGAME; BLASINGAME FAMILY BUSINESS INVESTMENT TRUST; and BLASINGAME FAMILY RESIDENCE GENERATION SKIPPING TRUST; | ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

Before the Court is Defendants' Motion for Clarification Regarding Remaining Issues for Trial, filed on July 6, 2017. (ECF No. 226 ("Clarification Mot.").) On July 27, 2017, Plaintiff Church Joint Venture, a Limited Partnership ("Church JV") filed a response to the Motion for Clarification. (Pl.'s Resp. to Defs.' Mot. for Clarification Regarding Remaining Issues for Trial, ECF No. 227 ("Clarification Resp.").)

For the following reasons, the Clarification Motion is GRANTED in part and DENIED in part. To the extent Church JV asks this Court to reconsider its Order dated March 9, 2017, that request is DENIED.

## I. BACKGROUND

The history of this matter is recounted in Section I of the Court's Order dated November 17, 2016, and Section I of the Court's Order dated March 9, 2017. See Church Joint Venture, a Ltd. P'Ship v. Blasingame, No. 2:12-CV-02999, 2016 WL 6810873, at *2–5 (W.D. Tenn. Nov. 17, 2016); Church Joint Venture, a Ltd. P'Ship v. Blasingame, No. 2:12-CV-02999, 2017 WL 943961, at *1–3 (W.D. Tenn. Mar. 9, 2017) ("March 2017 Order"). This section addresses only the March 2017 Order and subsequent proceedings.

The March 2017 Order limited the trial to two issues. See, e.g., March 2017 Order, 2017 WL 943961, at *1. The first is whether and to what extent deposits of annuity and paycheck payments by Margaret Gooch Blasingame ("MGB") between January 1, 2007, and July 31, 2008, into a bank account in the name of the Blasingame Family Residence Generation Skipping Trust ("BFRGST") are fraudulent transfers. Id. at *1, *8. The second is whether and to what extent the transfer by MGB and Earl Benard Blasingame ("EBB") of certain real property (specifically, property listed in a quitclaim deed dated January 14, 2005) to the Blasingame Family Business Investment Trust ("BFBIT") is a fraudulent transfer. Id. at *1, *9. After entry of the March 2017 Order, trial in this matter was scheduled for March 20, 2017. (See, e.g., Minutes, ECF No. 216.)

2

On March 15, 2017, Church JV filed an Agreed Emergency Motion for Continuance of Trial Setting. (ECF No. 219.) The Court granted the motion and scheduled a telephone conference on April 4, 2017. (Order Granting Emergency Mot. for Continuance of Trial Setting, ECF No. 220; Notice of Setting, ECF No. 222.) After the telephone conference, the Court scheduled the trial for June 19, 2017, with a pretrial conference on June 7, 2017. (Notice of Re-Setting, ECF No. 224.)

The parties submitted a proposed Joint Pretrial Order on June 2, 2017. The Joint Pretrial Order suggested that, notwithstanding the Court's prior orders, the parties disagreed about the scope of the issues remaining for trial. At the pretrial conference, Defendants addressed certain legal issues that, they contended, needed to be resolved before trial. The Court ordered Defendants to file a motion addressing any outstanding legal issues, and ordered Church JV to file a response. Defendants filed the Clarification Motion on July 7, 2017, and Church JV filed the Clarification Response on July 27, 2017.

## II. ANALYSIS

### A. Argument Based on Section 26-2-106(a)

The Clarification Motion asks the Court to "clarify and/or modify [the March 2017 Order] regarding the scope of issues remaining for trial" in two ways. The first clarification sought is how section 26-2-106(a) of the Tennessee Code affects the

3

claim that MGB's transfers of annuity and paycheck payments into a BFRGST account were fraudulent transfers.

Under section 66-3-302(12) of the Tennessee Code, "transfer" means "every mode . . . of disposing of or parting with an <u>asset</u> or an interest in an <u>asset</u> . . . ." (Emphasis added.) "Asset" means "property of the debtor," but does not include "[p]roperty to the extent it is generally exempt under nonbankruptcy law." Tenn. Code Ann. § 66-3-302(2). Defendants argue that, under section 26-2-106(a) of the Tennessee Code, "the maximum amount of disposable earnings which a creditor of MGB could have garnished from her paycheck is 25% of her disposable earnings." (Clarification Mot. 2.) As a result, Defendants argue that only 25 percent of MGB's paycheck transfers are "assets" that can be fraudulently transferred. (<u>Id.</u>)

The Clarification Response argues that section 26-2-106(a) "deals with exemption as to earnings but only in the context of garnishment," and that it "specifically does not address or apply to the question of whether the transfer of earnings to a third-party [*sic*], in an attempt to hinder, delay or defraud a creditor of the wage earner, can be defeated or not." (Clarification Resp. 2-3.) Church JV cites <u>Lawrence v. Jahn</u> (<u>In re Lawrence</u>), 219 B.R. 786, 793 (E.D. Tenn. 1998), for the proposition that, notwithstanding section 26-2-106(a), "[o]nce earnings come into the debtor's possession, creditors have the right under

4

Tennessee law to attach and execute on the earnings to collect debts . . . ." (Clarification Resp. 3.)

Lawrence addressed a solo-practitioner podiatrist undergoing a Chapter 7 bankruptcy. 219 B.R. at 789. He had $140,000 in uncollected bills to patients, and he claimed that, because of section 26-2-106(a), 75 percent of that sum was exempt from bankruptcy. Id. The bankruptcy trustee responded, inter alia, that section 26-2-106(a) "merely limits the amount of earnings which may be garnished outside of bankruptcy and does not purport to create an exemption of earnings from bankruptcy . . . ." Id. The district court affirmed a bankruptcy-court decision that agreed with the trustee. See, e.g., id. at 790, 792–800.

Defendants' argument, however, is not that section 26-2-106(a) establishes an exemption from bankruptcy that applies to MGB's paycheck payments. (See generally Clarification Mot.) Defendants' argument is that section 26-2-106(a) establishes that 75 percent of MGB's paycheck payments are not "assets" under Tennessee's fraudulent-transfer law, and that any transfer above 25 percent of those payments cannot be a fraudulent transfer.

Defendants' argument fails. Under section 66-3-302(12), "asset" does not include "[p]roperty to the extent it is generally exempt under nonbankruptcy law." A premise of Defendants' argument is that section 26-2-106(a) makes 75 percent of a debt-

5

or's paycheck payments "generally exempt under nonbankruptcy law." Lawrence explains that some Tennessee statutes make property generally exempt under nonbankruptcy law, but that section 26-2-106(a) does not:

> Various Tennessee statutes provide for particular items of a debtor's property to be completely exempt from all judicial process initiated by creditors to collect debts. These statutes create exemptions cognizable in bankruptcy under 11 U.S.C. § 522(b). Whenever the Tennessee Legislature has sought to create a bankruptcy exemption, it has inserted key language into the Tennessee statutes stating that the property shall either be "exempt from execution, seizure or attachment" or, if the property may be in the possession of a third person, "exempt from execution, attachment or garnishment." This broad language expressly prohibits creditors from ever subjecting the debtor's exempted property to any judicial process for the collection of debts. . . .
>
> The Tennessee garnishment statute at issue here, Tenn. Code Ann. § 26-2-106, is fundamentally different from these other Tennessee exemption statutes. Section 26–2–106 does not contain similar broad language that completely and permanently exempts a debtor's earnings from the reach of creditors through judicial process. . . .
>
> . . . .
>
> Section 26-2-106(a) merely limits to 25% the amount of disposable earnings that may be subjected to garnishment while the earnings are in the possession of a third person. Section 26-2-106 does not expressly prohibit creditors from the attachment, seizure and execution on earnings which are in the debtor's possession. The statute is silent about whether the remaining 75% of the

6

> earnings are exempt from creditors once the earnings are paid over and distributed to the debtor. There are no reported decisions by the state courts of Tennessee which discuss this specific question of law and interpret § 26-2-106 as either allowing or not allowing creditors to attach and execute on earnings in the debtor's possession.

Lawrence, 219 B.R. at 792-93 (citations omitted).

Lawrence does not bind this Court, but its reasoning persuades the Court that section 26-2-106(a) does not make portions of a debtor's paycheck payments "generally exempt under nonbankruptcy law." Lawrence was decided in 1998, but the statutory language on which it relies, including the language in section 26-2-106(a), has not changed. Since Lawrence was decided, no reported Tennessee decisions have considered whether § 26-2-106 permits creditors to attach and execute on earnings in the debtor's possession. For the reasons stated in Lawrence, section 26-2-106(a) does not make 75 percent of a debtor's paycheck payments "generally exempt under nonbankruptcy law." Defendants' argument that 75 percent of MGB's paycheck payments are not an "asset," and so cannot be transferred fraudulently, fails.[1]

---

[1] Alternatively, Defendants argue that "MGB could have exempted up to $4,000.00 worth of such paychecks or annuity payments pursuant to her general exemption under T.C.A. § 26-2-103." (Id.) Defendants argue that, whatever the amount of MGB's paycheck and annuity deposits transferred to BFRGST, the most that could have been an "asset," for fraudulent-transfer purposes, is that amount minus the $4,000 general exemption. (Id.) Defendants' argument is not well taken. Under section 26-2-103(a), one "may select for exemption" certain property. (Emphasis added.) De-

7

The Clarification Motion is DENIED as to Defendants' arguments based on section 26-2-106(a) of the Tennessee Code.

**B.   Pleading Argument**

The second clarification that Defendants seek is itself unclear.  Defendants focus on the allegations in the First Amended Original Complaint (the presently operative complaint).  (Clarification Mot. 3–4; see also First Am. Original Compl., ECF No. 83-1.)  They argue that, "[w]ith respect to the two remaining transfers at issue, there are no allegations that transfers were made under any legal theory other than actual intent to hinder, delay or defraud creditors."  (Id. at 3.)  Defendants assert that, "[b]ecause Plaintiff had a duty to plead fraud with specificity and Plaintiff's allegations are limited to the claim that the remaining transfers at issue were made with actual intent to hinder, delay and defraud, it would be improper to permit Plaintiff to proceed on alternative theories which have not been pled where the time for amending the complaint has long passed."  (Id.)  Defendants argue "the Court should limit the issues to be tried to whether the transfers at issue were made with actual[] intent to hinder, delay and defraud creditors and should pre-

---

fendants do not represent that MGB selected $4,000 of paycheck or annuity payments to be assets exempt from execution.  (See generally Consolidation Mot.)  They argue that she "could have" made that selection.  The general exemption does not protect MGB.

clude Plaintiff from attempting to assert claims based on constructive fraud." (Id. at 3-4.)

Defendants' argument can be construed in two ways. The first is that, as to the remaining transfers at issue, Church JV should be barred from offering circumstantial evidence of Defendants' intent. That construction cannot be sustained. Under section 66-3-305(a)(1), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Section 66-3-305(b) provides that, "[i]n determining actual intent under subdivision (a)(1), consideration may be given" to a nonexclusive list of eleven factors. Church JV correctly asserts that "[t]hese factors, often referred to as 'badges of fraud' are, in essence, circumstantial evidence of actual fraud." (Clarification Resp. 5.) Numerous cases make the point. See, e.g., Teague v. Kidd, No. E2016-01995-COA-R3-CV, 2017 WL 2299059, at *8 (Tenn. Ct. App. May 25, 2017); Macon Bank & Tr. Co. v. Holland, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). The statute makes these factors relevant in determining actual intent. A plaintiff such as Church JV pursuing fraudulent-transfer claims based on actual intent must be able to present evidence addressing the statutory factors. Church JV may

9

offer circumstantial evidence bearing on Defendants' actual intent while engaging in the transfers at issue in this case.

The second construction of Defendants' argument is that Church JV should be barred from contending that the remaining transfers are fraudulent on a theory other than the actual-intent theory of section 66-3-305(a)(1). Section 66-3-305(a)(2) specifies two other categories of fraudulent transfers. Under section 66-3-305(a)(2)(A), a transfer is fraudulent if the debtor did not "receiv[e] a reasonably equivalent value in exchange for the transfer" and the debtor "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." Under section 66-3-305(a)(2)(B), a transfer is fraudulent if the debtor did not "receiv[e] a reasonably equivalent value in exchange for the transfer" and the debtor "[i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Defendants appear to argue that Church JV should be able to bring their remaining fraudulent-transfer claims only under section 66-3-305(a)(1), and should not be allowed to argue that any transfers were fraudulent under either prong of section 66-3-305(a)(2).

The issue is whether Church JV has pled the section 66-3-305(a)(2) theories sufficiently in the operative complaint. De-

fendants argue that "[t]he Complaint does not contain any allegations that the remaining transfers to be tried were not made for a fair consideration." (Consolidation Mot. 3.)

Defendants' argument is well taken. First, the fraudulent-transfer count in the First Amended Original Complaint relies on an actual-intent theory, not a section 66-3-305(a)(2) theory. The substantive paragraphs allege:

> 100. This Court may set aside and avoid any transfer of an interest of the Debtors in property or any obligation incurred by the Debtors that is voidable under applicable law by a creditor holding an unsecured claim.
>
> 101. More specifically, Church JV asserts that the Debtors' transfers of assets and property by and between Debtor, the Trusts and Corporations noted herein, as recited above, as well as any other transfers which may be demonstrated, were with the specific intent, direct or indirect, of delaying, hindering, or defrauding Church JV and other creditors and, therefore, were fraudulent conveyances and devices within the meaning of applicable Tennessee avoidance law, see T.C.A. 66-3-101 et seq., and subject to being avoided for the benefit of Church JV within the meaning of T.C.A. 29-12-101 et seq. and should be set aside and avoided by the Court.

(First Am. Original Compl. ¶¶ 100-01.)  The claims in these paragraphs sound in the actual-intent theory of section 66-3-305(a)(1), not the theories in sections 66-3-305(a)(2).

Second, the Clarification Response does not cite any paragraphs of the First Amended Original Complaint that contain the factual and legal allegations necessary to plead fraudulent transfers under either section 66-3-305(a)(2) theory, generically or with specific reference to the transfers that remain at issue. (<u>See generally</u> Clarification Resp. 3–5.)

Church JV must prove the transfers that remain at issue under the actual-intent theory of fraudulent transfers in section 66-3-305(a)(1).[2]

As to Defendants' pleading argument, the Clarification Motion is GRANTED in part and DENIED in part. The Clarification Motion is DENIED to the extent Defendants argue that Church JV should not be allowed to introduce circumstantial evidence bearing on Defendants' actual intent when making the transfers remaining at issue. The Clarification Motion is GRANTED to the extent Defendants argue that Church JV must prove that the remaining transfers at issue were fraudulent based on the actual-intent fraudulent-transfer theory in section 66-3-305(a)(1).

---

[2] Evidence that would directly prove an element of a fraudulent transfer under a section 66-3-305(a)(2) theory may be relevant circumstantial evidence to prove a fraudulent transfer under the actual-intent theory of section 66-3-305(a)(1). The jury, however, will only be instructed on the section 66-3-305(a)(1) theory.

12

## C. Church JV Request for Reconsideration

In the Clarification Response, Church JV suggests that, at the June 7 conference, the parties were asked to brief "what . . . the parties believe are the remaining issues for trial." (Clarification Resp. 1.) At the June 7 conference, the Court instructed the parties to brief any remaining <u>legal</u> issues that must be resolved before trial can proceed on the transfers identified in its March 2017 Order. Defendants noted two such issues and briefed them in the Clarification Motion. Church JV suggested at the June 7 conference that it was unaware of any additional legal issues.

Church JV cites two prior filings: its Memorandum Addressing Issues Remaining for Trial (ECF No. 198) and its Response to Defendants' Memorandum Concerning Remaining Claims to be Tried (ECF No. 200). Church JV says it "believes that the issues identified in [those filings] are the issues/claims which remain for trial in this action." (Clarification Resp. 2.)

That argument is not well taken. The March 2017 Order considered Church JV's filings (and Defendants' parallel filings) and ruled on the issues presented. Church JV effectively asks the Court to reconsider its March 2017 Order. That request is unsupported. Under Local Rule 7.3, a motion for reconsideration requires the movant to specifically show "(1) a material difference in fact or law from that which was presented to the Court

before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order." Church JV makes no showing on any of these grounds.

Church JV's request for reconsideration is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Clarification Motion is GRANTED in part and DENIED in part. Church JV's motion for reconsideration of the March 2017 Order is DENIED. The issues remaining for trial are: (1) whether and to what extent deposits of annuity and paycheck payments by MGB between January 1, 2007, and July 31, 2008, into a bank account in the name of the BFRGST are fraudulent transfers under section 66-3-305(a)(1); and (2) whether and to what extent the transfer by MGB and EBB of property listed in a quitclaim deed dated January 14, 2005, to the BFBIT is a fraudulent transfer under section 66-3-305(a)(1).

So ordered this 8th day of August, 2017.

14

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE